## In re NEW YORK COMMERCIAL CO.

### (Circuit Court of Appeals, Second Circuit. February 15, 1916.)

### No. 125.

BANKRUPTCY ☞368—TRUSTEE'S COMMISSIONS—AMOUNT DISBURSED.

A bankrupt had purchased quantities of rubber and had contracted to sell it to its customers. As part of the arrangement it had contracted to procure letters of credit to enable the seller to pay for rubber it had contracted to purchase. Rubber having fallen in price, the bankrupt would have been liable to damages if the contracts were not fulfilled. The contracts with the bankrupt's customers were therefore assigned to the seller under an agreement that it would ship the rubber to the customers and account for profits to the bankrupt; but the seller became unable to supply the necessary funds, and an arrangement was entered into under which the contracts with customers were assigned to New York banks which agreed to furnish letters of credit. To induce this arrangement the bankrupt's trustees deposited $50,000 with the banks, and they were to repay this advance and the further sum of $50,000 as a liquidated profit. Though the trustees attended to the delivery of the rubber, they never received the proceeds, and the trial court found that they handled the rubber as agents of the seller and the banks. *Held* that, under Bankr. Act July 1, 1898, c. 541, § 48a, 30 Stat. 557 (Comp. St. 1913, § 9632), providing that trustees shall receive commissions on moneys disbursed by them, not exceeding those therein specified, and section 72 (section 9656), providing that the trustee shall not in any form receive any other or further compensation than that expressly authorized and prescribed by that act, the trustees were entitled to commissions only on the $50,000 profit; that being the only amount disbursed by them, though the volume of business transacted was about $900,000.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 571; Dec. Dig. ☞368.]

Petition to Revise Order of the District Court of the United States for the Southern District of New York.

In the matter of the New York Commercial Company. On petition to revise an order modifying an · allowance of commissions to the trustee. Order affirmed.

This case comes here on petition to revise an order of the District Court which reversed an order of the referee in bankruptcy allowing the trustees the sum of $10,000 as commissions upon the proceeds of a sale of rubber which resulted in a profit of $50,000 upon the volume of business transacted, which was about $900,000. The District Judge based his award upon the profits actually realized and limited the allowance to the statutory percentages upon $50,000.

The following is the opinion of Augustus N. Hand, District Judge, in the court below:

I should greatly prefer to affirm the referee, for I consider the trustees performed a most meritorious service, made a profit for the estate, and by their resourceful work saved it perhaps from an almost overwhelming loss. In my opinion, however, the statute upon the particular facts shown forbids, and they must be limited for the service in question to the commission upon $50,000, though the large sum of $900,000 was involved in the transaction as a whole.

The bankrupt had purchased from A. W. Alden & Co., Limited, an English company, large quantities of rubber, and had in turn contracted to sell the rubber in New York. The English company had itself contracted for this merchandise. Rubber had fallen in price, so if the contracts were not fulfilled the English company would have been liable for damages which it could have claimed against the bankrupt estate, said to amount to several hundred thousand dollars. As part of the arrangement between the English company and the bankrupt, the latter had contracted to procure the issue of letters of credit to enable the English company to pay for the rubber it had contracted to purchase. When the New York company became insolvent and unable to supply these letters of credit, the receiver of the latter was authorized to assign the contracts with its American customers to the English company under an agreement by which the English company was to raise the money direct, ship the rubber to the customers, and account for the profits to the New York company, which was a holding company of the English company. Thus the business proceeded until the English company became financially embarrassed and was unable to supply the funds to pay for the rubber it had purchased. Then, owing to the fall in the price of rubber, the peril was very great, and the New York company, through its trustees in bankruptcy, the English company, and three New York banks, entered into an arrangement to finance these importations of rubber, the terms of which become important. The English company assigned to the banks the contracts with the American customers (which it had received by assignment from the bankrupt estate), and the banks agreed to furnish the English company with letters of credit aggregating about £120,000 to finance the importations. The English company agreed to ship the rubber through the banks who were to receive the entire proceeds. To induce the banks to do this, the trustees under order of court deposited $50,000 with the banks. From the proceeds of the sales, the banks, after paying their own commissions and charges, were to repay the trustee their advance of $50,000 and the further sum of $50,000 as a liquidated profit.

While the trustees attended to the delivery of the rubber, they never received or were entitled to the proceeds, nor, as it seems to me, ever handled the rubber, except as agents of the English company and the banks, who with the English company and aided by the guaranty furnished by the deposit of $50,000 by the trustees, had actually done the financing, nor had the trustees ever contracted to purchase the rubber. The analogy mentioned by the referee to an issue of receivers' certificates is not, I think, sound. The trustees bound their estate no farther than the deposit of $50,000, were under no general liability by reason of the advances of the banks, had no title to the rubber, and never were in the position of even constructive possessors of a fund as in the case of In re Columbia Cotton Oil, etc., Co., 210 Fed. 824, 127 C. C. A. 374. Nor do I agree with the counsel for the trustees that the method of financing the transaction in question was the same as the bankrupt practiced before the failure. Then, if I am not mistaken, the New York Commercial Company would have borrowed from the banks, pledged its credit, had title to the shipments, and thus actually or constructively wholly controlled them. Here it had nothing but an equity in the profits, no general obligation to pay for the rubber, no title, and no possession on its own account. The English company was bound to ship the rubber to the American customers and to pay for the rubber, and the banks were, in the language of the contract, "to receive * * * the entire proceeds of all shipments." The storage of a portion of the rubber in the warehouse of the bankrupt, for which regular charges were paid to the estate, and the attention to delivery to the customers by one of the trustees, Mr. De Long, for which he was paid by the English company without objection by any of the parties, has, I think, no bearing upon the case, and was no part of the duty of the trustees as such.

In spite, therefore, of the careful report of the referee, who has evidently given this case most studious consideration, I must hold that the commissions are limited to the statutory percentage upon $50,000 and an order should be entered accordingly allowing such sum and disallowing the award of $10,000 made by the referee.

John W. Ingram, of New York City, for appellants.

Edwin T. Rice and Cornelius W. Wickersham, both of New York City, for appellees.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

COXE, Circuit Judge. There is no question that the trustees performed valuable services for the estate which resulted in a profit of $50,000. The question here is one of power—had the referee the right, under the provisions of the Bankruptcy Act, to make the award of $10,000 in question?

Section 48a provides what the trustees' compensation shall be. It is based on all moneys disbursed or turned over to any person, including lienholders, by the trustees. The percentage is such as may be allowed by the courts, not to exceed 6 per centum on the first $500, 4 per centum on moneys in excess of that sum, etc., etc. If there be three trustees the court shall apportion the fees and commissions between them according to the services actually rendered, so that there shall not be paid to trustees for the administering of any estate a greater amount than one trustee would be entitled to. If other payments are made to the trustee for his services, authority for such payments must be found outside of the act for there is certainly nothing in the act authorizing additional payments. The courts are wholly controlled by the provisions of the act. As was said by the court in Re Breakwater, 224 Fed. 333, 140 C. C. A. 19:

"Congress intended by the amendments to section 40a and section 48a to provide what it considered ample compensation for services to be rendered by referees and trustees, and by section 72, to relieve the courts of the necessity of determining what constitutes legal compensation for those officers."

Section 72 is as follows:

"That neither the referee, receiver, marshal, nor trustee shall in any form or guise receive, nor shall the court allow him, any other or further compensation for his services than that expressly authorized and perscribed in this act."

The facts are stated in the opinion of Judge Augustus N. Hand and need not be repeated here. We agree with him that it cannot be said that the trustees disbursed the money received from the sale of the rubber except as to the $50,000 profit upon which commissions were allowed.

The order is affirmed.