In the Matter of **CHEYENNE WELLS ELEVATOR CORP., Bankrupt.**

Arthur **FRITTON**, Petitioner on Review,

v.

James E. **WAGNER**, Trustee in Bankruptcy, Respondent on Review.

No. 40006.

United States District Court
D. Colorado.
April 7, 1967.

John P. Gately, Aurora, Colo., for petitioner on review.

Charles E. Matheson, Denver, Colo., for respondent on review.

## MEMORANDUM OPINION AND ORDER

WILLIAM E. DOYLE, District Judge.

This matter is a petition for review of an order of a referee in bankruptcy. The question which has been certified is as follows:

"Did the referee err, upon the evidence before him and the applicable law in assessing against Arthur Fritton an aliquot portion of the fees and expenses incurred by the Trustee in selling certain wheat to which said Fritton and others were entitled and thereby creating a fund requiring administration and disposition by the Court and its officers?"

Prior to its adjudication in bankruptcy on October 2, 1964, the bankrupt had been engaged in the operation of a grain storage warehouse in Cheyenne Wells, Colorado. When bankruptcy occurred, there was a quantity of wheat in storage on the bankrupt's premises. This was insufficient to satisfy the amounts represented by outstanding warehouse receipts. As a result there was contention between the trustee and the holders of the warehouse receipts and also between the holders. Due to difficulties in distributing the wheat in kind, and the delay and expense of holding the wheat pending determination of ownership, the trustee was authorized to sell the wheat free of claims. The wheat claimants, including the petitioner here, consented to the sale free and clear. The proceeds of the sale have been held by the trustee for distribution upon a determination of ownership.

The petitioner, a receipt holder, filed a claim for the entire amount of the wheat stored by him without any *pro rata* offset based on the shortage. The trustee resisted Fritton's claim and litigation ensued between the trustee and the receipt holders. After a proceeding in interpleader and the final order of allocation set by the referee, Fritton sought review. Upon review, this Court determined that all wheat claimants were co-owners of the mass and should share *pro rata* in the shortage. An order was entered setting Fritton's share of the mass, his gross share of the sale proceeds, and his net share after deducting storage charges.

The trustee's sale of the wheat produced a net fund of approximately $31,-400.00.

Following the entry of the final order of this Court determining the manner of allocation, the trustee and his attorney sought an allowance for fees out of the wheat fund as compensation for their services in preserving the wheat, effecting its sale, and in creating the fund to which each of the wheat claimants, including Fritton, assert their proportionate claims. The referee also determined that the wheat fund was liable for the statutory fees provided for the Referees' Salary and Expense Fund.

The order of the referee, which is the matter before us here, allowed $315.64 or 1% of the gross proceeds as the trustee's fee, $987.50 as fees for the trustee's attorney, and $789.10, or 2½% of the gross for the Referees' Salary and Expense Fund. These expenses were ordered paid out of the wheat fund. Petitioner does not dispute the reasonableness of the fees. He did, however, object to payment of these expenses out of the wheat fund. Thereupon, the trustee issued an order to Fritton requiring him to show cause why the fees should not be payable out of the fund. Fritton responded that the wheat was not a part of the bankrupt's estate and that the fees, if due, must be payable from the general estate rather than from the wheat fund. At hearing, Fritton's counsel

stated that there was no dispute as to the amounts of the fees but only to their being paid from the fund. It was stipulated that the general estate is adequate to pay the fees.

The referee made findings of fact and conclusions of law in which he found that the fees sought were reasonable and proper; that the services rendered were timely and efficiently performed; were required to create the fund against which they are sought to be deducted and that allowances chargeable to Fritton would be in the ratio his share bore to the whole fund; the referee gave effect to that ratio and fixed the dollar amounts due each wheat claimant after deducting storage charges as per this Court's order.

On October 2, 1964, the Bankruptcy Court came into custody and control of a large quantity of wheat. Based on the fact that the wheat was not an asset of the bankrupt's estate, and there were wheat depositors with warehouse receipts for amounts of wheat exceeding that in store whereby the trustee asserted no claim of ownership on behalf of the bankrupt, Fritton contends the trustee had no authority to sell the wheat and seek an allowance. He maintains that the fees sought are costs of administration and are not chargeable to the fund since the fund was not an asset of the estate and the estate was not enhanced by it.

This reasoning overlooks the fact that the Bankruptcy Court found itself in control of the wheat and was obliged through the trustee to preserve it and to distribute it pending a determination of ownership. Because of the costs of storage during this litigation and due to the variety of claims, the Court directed the trustee to sell the wheat and hold the fund until that determination was made. The various claimants, including Fritton, consented to this procedure of selling the wheat free and clear of claims. After that it was still necessary to determine the ownership of the fund among the contesting claimants, including Fritton, in the interpleader proceedings.

It is fundamental that a court which has in its possession and control a fund representing the proceeds of property subject to its jurisdiction, may charge against that fund the expenses incurred in creating, preserving, administering and distributing the fund. Warren v. Palmer, 310 U.S. 132, 60 S.Ct. 865, 84 L.Ed. 1118, (1940); In re Prindible, 3 Cir. 1940, 115 F.2d 21; Adair v. Bank of America National Trust & Savings Association, 303 U.S. 350, 58 S.Ct. 594, 82 L.Ed. 889, (1938). Fritton agrees that this principle applies to expenses incident to selling the wheat, including the storage charges. It is the trustee's fee, the trustee's attorney's fee and the referee charge incurred during the litigation which is the bone of contention. In support of his contention that the fees may not be charged against the wheat fund, Fritton cites Reconstruction Finance Corp. v. Cohen, 10 Cir. 1950, 179 F.2d 773 and Gillespie v. J. C. Piles & Co., 8 Cir. 1910, 178 F. 886. Neither of these cases is applicable. *Cohen* had to do with a Reconstruction Finance Corporation mortgage on trucks and equipment. The mortgaged property had a value in excess of the mortgage debt. It was because of this that the Court of Appeals, through Judge Bratton, held that the general administrative expenses were payable out of the funds of the general estate rather than from the fund due the secured creditor.

The *Gillespie* case is also inapposite. There the trustee took charge of property which the bankrupt had obtained by fraud. Following rescission the trustee was required to restore this property. The Court properly ruled that the property had not been that of the bankrupt and the trustee had no claim to it and had not been called on to administer it.

On the other hand the *Warren, Prindible* and *Adair* cases all support the position which was taken by the referee; that is to say, that the cost of protecting and administering a fund in the hands of the court is properly chargeable to the fund itself, and that this principle applies in bankruptcy as well as in other cases. The comment of Collier, 3 Collier on Bankruptcy, 1399, ¶ 6203[2], 1629,

**930**

¶ 62.33, note 3, and 4 Collier, 1895, ¶ 70.-99, are not in conflict with the position which the referee has taken and which we here uphold.

The principle involved is the equitable one which levies the charges against those who have derived primary benefit. Therefore, where, as here, the trustee was required to secure and preserve a fund derived from the sale of property which had come under the jurisdiction of the Bankruptcy Court, and where, as here, the referee has been required to determine entitlement to this fund, the administrative expenses incident to the preservation and administration of the fund are properly chargeable to it rather than to the general estate.

It follows that the referee's order was correct, and it is hereby affirmed.