**In the Matter of George J. SCHAUTZ, Bankrupt.**

**No. 290, Docket 31179.**

United States Court of Appeals
Second Circuit.

Argued Jan. 18, 1968.

Decided March 11, 1968.

Isadore M. Mackler, pro se.

Before LUMBARD, Chief Judge, and WATERMAN and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

Isadore M. Mackler, as trustee in bankruptcy of the estate of George J. Schautz, appeals from a decision of the United States District Court for the District of Connecticut, Robert C. Zampano, J., which denied the trustee a portion of the compensation claimed for his services. The issue on appeal is whether a bankruptcy trustee may be awarded a fee based upon the full purchase price obtained and subsequently disbursed by him in the sale of real estate owned jointly by the bankrupt and his wife. For reasons indicated below, we answer the question in the affirmative and reverse the decision below.

Since the question before us relates to the trustee's compensation, we will discuss only the facts relevant to that issue. The trustee qualified on November 24, 1961. The major asset of the estate was real estate located in New Canaan, Connecticut, which was jointly owned by the bankrupt and his wife. There were first and second mortgages on the property, as well as various other liens. In an apparent attempt to obtain a better price, the trustee arranged with the wife, the mortgagees, and the lien creditors to sell the entire property free and clear of liens, with the liens to attach to the proceeds. By stipulation filed in the bankruptcy court, Mrs. Schautz authorized the trustee in bankruptcy "to sell all of my undivided one-half interest in the real property which I own jointly with the said trustee." She also agreed that the proceeds of both interests could be applied first to payment of the direct expenses of the sale, including the expenses of the auctioneer, the appraiser and the advertising costs, and then to the payment of taxes, mortgages and liens; the balance would be distributed equally to the wife and the trustee. Thereafter, the referee authorized the trustee to sell the entire property free and clear of liens, and Mrs. Schautz gave a quitclaim deed for her interest in the property to "Isadore M. Mackler, Trustee in Bankruptcy of the Estate of George John Schautz, a. k. a. George J. Schautz, Jr." The trustee sold the entire interest at public auction for a total of $46,256.05; this sale to a third party was approved by the referee by an order of April 19, 1962. The trustee apparently deposited the proceeds to his account

as trustee, and paid all the mortgages, liens, and the wife's share from this account; each check was countersigned by the referee.

In March 1966, the trustee filed a petition for allowance of compensation for his services. The referee awarded him $415.00 for his services as trustee, based on gross proceeds of $23,780.78. The referee ruled that under section 48c(1) of the Bankruptcy Act, 11 U.S.C. § 76(c) (1), Mrs. Schautz's interest in the New Canaan property could not be taken into account in determining the maximum fee allowable to the trustee. The referee found that Mrs. Schautz did not turn over her interest to be administered as an asset of the estate or consent to the imposition of administrative expenses, and that "the proceeds obtained from it [Mrs. Schautz's interest] were not received by Isadore M. Mackler in his capacity as trustee in bankruptcy." The trustee petitioned for reconsideration, claiming that he was entitled to additional commissions of $479.38 for the sale of the one-half interest owned by Mrs. Schautz. When the referee adhered to his original ruling, the trustee petitioned the district court to review this order. The petition was denied on the ground that under the statute, "moneys belonging to another which do not become assets of the bankrupt's estate are not to be considered in the computation of the trustee's fee, even though these moneys passed through his hands incidental to the trustee's liquidation of the bankruptcy estate." The trustee then appealed to this court.

Section 48c, which establishes the rate of compensation for trustees, provides:

The compensation of trustees for their services, payable after they are rendered, shall be a fee of $10 for each estate, deposited with the clerk at the time the petition is filed in each case * * * and such further sum as the court may allow, as follows:

(1) Normal administration. When the trustee does not conduct the business

of the bankrupt, such sum as the court may allow, but in no event to exceed 10 per centum on the first $500 or less, 6 per centum on moneys in excess of $500 and not more than $1,500, 3 per centum on moneys in excess of $1,500 and not more than $10,000, 2 per centum on moneys in excess of $10,000 and not more than $25,000, and 1 per centum on moneys in excess of $25,000, upon all moneys disbursed or turned over by them to any persons, including lienholders * * *.

The question before us is whether "all moneys disbursed * * * to any persons" includes the sum received by the trustee for the sale of Mrs. Schautz's half interest and subsequently paid to her or on her account. Even though joint ownership of real estate by bankrupt and spouse surely occurs frequently, we have been unable to find any case squarely deciding the issue posed here. The very absence of precedent may indicate a consistent pattern of practice as to whether the spouse's interest affords a basis for the trustee's fees. But as is so often the case when an appellate court gropes to glimpse the world beyond the reported opinions (and here without the help an adverse party might furnish),[1] we simply do not know what that practice is, if there is one. Perhaps the question rarely arises because the non-bankrupt spouse does not agree to sale of that spouse's interest by the trustee, hoping to bid in cheaply at the sale of the bankrupt's interest alone. In any event, we must attempt to find the answer in the hints of the reported cases and the policies underlying those decisions and the statute.

Section 48c sets the maximum compensation based on dollar amounts "disbursed or turned over" by the trustee. It thus seems to measure the amount, and perhaps even the difficulty, of the work on the basis of the size of the fund that the trustee supervises. See 2 Collier, Bankruptcy ¶ 48.07 [2] (14th ed. Moore 1966). Many other factors, such as the

1. At no time, before either the referee, the district court, or this court, has there been an appearance by any other party in opposition to the trustee.

number of hours required of the trustee or the difficulty of the job in the referee's opinion, could have been selected to establish the maximum allowance, but Congress has chosen this objective criterion. For many years the courts have approached the statute literally in deciding whether to include an item in the basis of compensation allowed to the trustee. If the trustee handled the money, either in fact, see In re Wallace, 14 F.2d 534, 537 (E.D. Okl.1926), aff'd sub nom. McMillan v. United States Fidelity & Guaranty Co., 22 F.2d 155 (8th Cir. 1927), or constructively, see In re Morse Iron Works & Dry Dock Co., 154 F. 214 (E.D.N.Y. 1906), courts included that amount in computing the fee. Moreover, this was so whether or not the general estate was benefited. For instance, the trustee was allowed to include in the base upon which his fees would be computed money collected as taxes and turned over to the Internal Revenue Service in In re Independent Distillers of Kentucky, 34 F. Supp. 708, 713 (W.D.Ky.1940), cash received upon the sale by the trustee of the bankrupt's exempt property (with the bankrupt's consent) and turned over to the bankrupt in In re Castleberry, 143 F. 1021 (N.D.Ga.1906), and moneys paid out in administration expenses in In re Wallace, supra. See also 6 Remington, Bankruptcy § 2741, at 307 (5th ed. Henderson 1952). As the court pointed out in In re Cramond, 145 F. 966, 972 (N.D. N.Y.1906), discussing the problem of whether any money disbursed to lienholders should be included in fixing the trustee's compensation (before the statute was amended in 1910 to make the answer clear):

> If the money comes lawfully into the hands of the trustee, as such, and, if he in the performance of his duty as such is required to protect, preserve, and care for it, and eventually disburse it pursuant to the order of the court, and does so, there is no reason why he should not have his commissions, if the court allows them, even if the funds are subject to a lien which in law and equity the court is required to recognize and enforce.

See also In re Lowell Textile Co., 288 F. 989, 990 (D.Mass.1923).

On the other hand, if the trustee did not actually or constructively disburse the money, the court based compensation on the estate supervised, not on the amount by which the general estate benefited. See In re New York Commercial Co., 231 F. 445 (2d Cir. 1916); In re Belfort Corp., 136 F.Supp. 1 (D.Md. 1955). The former case is particularly instructive. The trustees there engaged in an involved transaction; the net of it was that by depositing a sizeable sum with various banks, rubber was purchased and sold through the banks (apparently for $900,000) with a resultant benefit to the estate not only of $50,-000 profit but also avoidance of a possible "almost overwhelming loss." The trustees claimed fees based upon the $900,000. The district court (Augustus Hand) approved a fee based only upon the $50,000, even though the trustees were responsible for keeping the transaction alive and part of the rubber was in the bankrupt's warehouse. Judge Hand pointed out that the trustees had no title to the rubber and were not entitled to receive the proceeds of the sale. This court, while sympathetic to the trustees, affirmed, pointing out "that it cannot be said that the trustees disbursed the money received from the sale of the rubber * * *." 231 F. at 447. By contrast, the trustee in this case took possession of Mrs. Schautz's interest, sold it at a public auction, received the proceeds of the sale, and disbursed them.

■ Therefore, literal analysis of section 48c would alone suggest reversal. There is no question that the interest of Mrs. Schautz in the real estate actually came into the hands of the trustee by a deed, that he sold it free and clear of liens to a third party, and then disbursed the net proceeds of that sum to Mrs. Schautz and other creditors, all under the direct control and with the approval of the referee. Under such circumstances, those proceeds would seem to be "moneys disbursed [by the trustee] to any persons" and therefore a basis for

statutory commissions. Moreover, there is additional support for this view. When a secured creditor joins in a bankruptcy proceeding to have property sold free of liens, the trustee's commission is usually based on the total sales price. In re Lowell Textile Co., 288 F. 989 (D.Mass. 1923). In this situation, according to 2 Collier, supra ¶ 48.07 [2.1], at 1802:

> The crucial test seems to be, however, whether or not the particular property or fund has been justifiably administered in the bankruptcy court, or whether or not the trustee has properly performed services in relation thereto.

See In re Sanford Furniture Mfg. Co., 126 F. 888 (E.D.N.C.1903). Much of the litigation deals with the correlative, more difficult question of who pays the trustee's fee, the lienholder or the general estate. See, e. g., In re Pioneer Sample Book Co., 374 F.2d 953, 961 (3d Cir. 1967); In re Cheyenne Wells Elevator Corp., 266 F.Supp. 927 (D.Colo.1967). See generally 4A Collier, Bankruptcy ¶ 70.99 [6] (14th ed. Moore 1967); Note, Allocation of Expenses Incurred in a Bankruptcy Sale Free of Liens, 53 Colum. L.Rev. 845 (1953). Since the trustee has already agreed, with the approval of the referee, that Mrs. Schautz's interest should not be charged with any part of his fee, that problem is not before us; the issue here is the basis on which to compute the trustee's fee, not who bears it. Applying the quoted test, no one has ever contradicted the trustee's claim that his decision to sell the entire property free of all liens created substantial benefit to the general estate. Moreover, the trustee, with the approval of the referee, was required to supervise Mrs. Schautz's interest to an appreciable extent. While it was not intended that that interest be a permanent part of the bankrupt's estate, this should not be controlling. See In re Mellor, 32 Am.Bankr.R. (n. s.) 725 (D. Hawaii 1936); 2 Collier, supra ¶ 48.07.

Thus, Mrs. Schautz's interest in the property was lawfully administered by the trustee, subject at each step of the way to the scrutiny of the referee, apparently to the benefit of all concerned. As we understand the statutory language, the relevant cases and the underlying considerations, we conclude that the referee and the district judge improperly limited the potential basis of compensation applicable to the trustee. Nor do we find persuasive the cases relied upon by them. In Brandt & Brandt Printers, Inc. v. Klein, 220 F.2d 935 (2d Cir. 1955), this court had ordered the trustee in bankruptcy to turn over partnership assets to a solvent partner. Thereafter, in In re Friedman, 232 F.2d 151 (2d Cir.), cert. denied, Klein v. Brandt & Brandt Printers, Inc., 352 U.S. 835, 77 S.Ct. 53, 1 L.Ed.2d 54 (1956), cited by the district judge, we held that no part of the expenses of administration could be paid out of the partnership assets. Since the trustee never rightfully held those assets, *Friedman* is not in point. In re Victor, 218 F.Supp. 218 (S.D.Ill.1963), involved a situation precisely the opposite of this one. In that case, the joint tenant wife vigorously objected to the bankruptcy sale of her one-half interest in the property; the court held that the trustee had no power to sell the property over her objection. In Gillespie v. J. C. Piles & Co., 178 F. 886, 44 L.R.A.,N.S., 1 (8th Cir. 1910), as in *Friedman,* the trustee's possession of the disputed property (hogs) was wrongful. Finally, while the court in In re Cramond, 145 F. 966, 972 (N.D. N.Y.1906), did say that there is a presupposition that the "money disbursed belonged to the estate of the bankrupt," the court also stated that funds could come into the hands of the trustee "by the consent or acquiescence of those interested therein," and emphasized that the trustee should get his commission whenever he is required to disburse moneys which he lawfully obtained.

We emphasize that the only question before us is whether Mrs. Schautz's interest may be taken into account in determining the maximum fee allowable. While in practice trustees are generally awarded the maximum fee, Snedecor, Fees and Allowances in Straight Bankruptcy, 40 Ref.J. 26 (1966), allowances

are subject to the discretion of the court. If the court feels that the trustee has merely inflated the moneys which he has disbursed to increase his compensation, rather than to benefit the estate, the court need not award the maximum fee. Cf. In re Meadows, 211 F. 948 (2d Cir.), cert. denied, 234 U.S. 763, 34 S.Ct. 997, 58 L.Ed. 1581 (1914); In re Lowell Textile Co., 288 F. 989 (D.Mass.1923).

The order of the district court is reversed; the case is remanded for proceedings consistent with this opinion.