In the Matter of Earl WILLIAMS, Jr., and Andrea Joyce Williams.

Bankruptcy Nos. BK–78–182 & 183.

United States Bankruptcy Court, D. Delaware.

Jan. 30, 1980.

Richard H. May, Young, Conaway, Stargatt & Taylor, Wilmington, Del., for Federal National Mortg. Assn.

Richard R. Cooch, Cooch & Taylor, Wilmington, Del., trustee for Earl Williams, Jr. and Andrea Joyce Williams.

MEMORANDUM OPINION

HELEN S. BALICK, Bankruptcy Judge.

Upon application by the trustee, this court entered an order on March 19, 1979 directing him to pay to Federal National Mortgage Association (FNMA), secured creditor, the sum of $33,433.32. This

amount represented principal and interest due FNMA on its mortgage against real estate of the Williamses sold by the trustee less certain preservation/sale expenses and trustee's attorneys fees.* FNMA filed a motion to set aside this order contending that it is entitled to the principal balance and interest due to the date of payment without deduction for any expenses. The parties waived hearing and argument and agreed to rely on the record and memoranda.

At the time of the filing of their petition in bankruptcy on August 24, 1978, the Williamses were the owners of property at 120 Hedgewick Drive, Newark, Delaware. Their Schedules reflect a real estate valuation of $45,000 subject to the lien of FNMA in the amount of $35,258.95. Testimony at the first meeting of creditors on September 11 supported this valuation, revealed that the mortgage would be in default three months on the 15th, that the bankrupts had not been notified of any intended foreclosure proceedings and that the property was vacant, the bankrupts having moved to Hanahan, South Carolina. At this point, it appeared that there was enough equity in the property, the only asset of the estate, to result in a small benefit for unsecured creditors. No unsecured creditors eligible to vote for a trustee appeared at the meeting. On the following day the court appointed Richard R. Cooch, Esquire, as trustee. He immediately obtained an informal appraisal of $45,000 for the property from Peter N. Greeley Real Estate. Francis L. Patterson of Holcomb and Salter Realty concurred in this appraisal. On October 18, the court authorized the trustee to sell the property privately through Holcomb and Salter at a 7% commission for a sum not less than. $42,000. A later search of the records of New Castle County revealed not one but three lien creditors, two of which are valid perfected security interests under bankruptcy law. The trustee approached the lien creditors to join in a stipulation to sell free and clear of liens. The second lien

creditor of record, Beneficial Finance Co. of New Castle County (Beneficial), had already consented when in early December one of the two prospective purchasers obtained by Holcomb and Salter was ready to enter into a sales contract at $42,000 with final settlement scheduled for February 27, 1979. The third lien creditor, acknowledging that its claim was not a valid secured lien, joined in the stipulation to facilitate the sale. FNMA joined in the stipulation late in January. On February 20, 1979, it filed a proof of claim for $35,287.86 plus 8% interest from June 1, 1978.

In determining whether FNMA should be burdened with any expenses, we must examine three cases decided by the Third Circuit Court of Appeals.

In 1938, the court in *Miners Sav. Bank of Pittston, Pa. v. Joyce*, 97 F.2d 973 (3rd Cir.) (hereafter *Joyce* ) said:

> While there is authority for the proposition that one who has a lien on the property of a bankrupt is entitled to be paid in full out of the proceeds of the liened property subject only to prior liens and a contribution to the expense of administering the bankrupt estate not in excess of what it would have cost to foreclose the lien, *Odendahl v. Pokorny Realty Co.*, 5 Cir., 76 F.2d 271, *we think the true rule to be that, where a trustee sells a bankrupt's property free of liens, with the consent of the lienholders, the latter are chargeable not only with the actual costs of sale but also with expenses reasonably incurred in the preservation of the property, Virginia Securities Corporation v. Patrick Orchards, 4 Cir., 20 F.2d 78, and with the trustee's and referee's commissions payable with respect to the proceeds of the sale, Tawney v. Clemson, 4 Cir., 81 F.2d 300, but with no other expenses of administration, except with their consent, express or implied, In re Torchia, 3 Cir., 188 F. 207.* (emphasis supplied)

---

* maintenance and preservation expenses $ 356.67

sales commission $2,940.00
attorney's fee $ 825.00

The court next decided *In re Street,* 184 F.2d 710 (3rd Cir. 1950). This case involved the question of whether the amount due the secured creditor should be reduced by the payment due the referee fund. The court held it should not since the value of the property was considerably more than the secured debt, the secured creditor had not affirmatively consented, and the sale resulted in a substantial amount for distribution to general creditors. However, the court noted that where there is no surplus over the debt secured by the lien, the lienholder should be required to pay its share of the expenses.

In the third case, *In re Pioneer Sample Book Co., Inc.* 374 F.2d 953 (3rd Cir. 1967) (hereafter *Pioneer*) it was apparent that the secured claim exceeded the value of the encumbered property. Therefore, the secured creditor was entitled to have the property surrendered to it rather than sold and administered in bankruptcy; however, it did not file a reclamation petition nor interpose any objection to the sale and distribution of the proceeds in bankruptcy. Citing *Joyce* and distinguishing *In re Street,* the court held that the secured creditor was responsible for its pro rata share of the justified administrative expenses, that is, statutory commissions of the referee and receiver-trustee as well as the actual costs of sale and preservation of the property, but was not responsible for the payment of attorney's fees for the trustee.

In hindsight it is obvious that the trustee should not have undertaken the preservation and sale of this property. However, we must remember that at the time the trustee sought permission to sell the property it appeared that FNMA was the only lien creditor and FNMA had not taken any action in the bankruptcy proceeding or otherwise to preserve the vacant property. Faced with a duty to preserve the estate and to reduce it to money the trustee immediately took necessary steps to do so. By the time it became apparent that the lien structure on the property would afford no benefit to general creditors, the realtor had potential purchasers. The trustee would have been justified in seeking abandonment; however, he approached the lien creditors to see if they would join in a stipulation to sell free and clear so the sale would not be lost. Beneficial consented in November. FNMA did nothing until it signed the stipulation the end of January.

FNMA claims that it could not have successfully objected or sought permission to foreclose because there was equity in the property for the benefit of the general estate. This is a specious argument. Early in November FNMA knew or should have known that its secured debt together with Beneficial's secured debt would wipe out any equity in the bankruptcy estate that would benefit general creditors. If FNMA wanted the "benefits" of a foreclosure action, it could have successfully sought relief from the stay. It chose instead to accept the trustee's continued services. Now, FNMA wishes to relieve itself of any obligation for the benefits it received.

Under the facts of this case, the general rule of *Joyce,* as limited by the holding in *Pioneer* that the secured creditor cannot be charged with the trustee's attorney fees, is applicable. In summary, the order of March 19, 1979 must be set aside. The principal balance and interest due FNMA is chargeable with its proportionate share of the costs of preservation and sale as well as trustee's commissions and the fee due the referee's salary and expense fund computed on the sum of $42,000. See §§ 40 and 48 of the Bankruptcy Act, 11 U.S.C. §§ 68, 76; *In re Schautz,* 390 F.2d 797 (1968 2nd Cir.).

Settle order.