### In re ALBERT BROTHERS CONTRACTORS, INC., Debtor.

### ALBERT BROTHERS CONTRACTORS, INC., Plaintiff (Appellee),

v.

### UNITED STATES FIDELITY AND GUARANTY CO., Defendant (Appellant).

Civ. A. No. 82–0392(R).

Bankruptcy No. 75–1202.

Adv. No. 75–1202(8).

United States District Court,
W.D. Virginia,
Roanoke Division.

Feb. 14, 1983.

Leon R. Kytchen, Wilbur L. Hazelgrove, William R. Rakes, Roanoke, Va., for plaintiff.

William B. Poff, Roanoke, Va., for defendant.

## MEMORANDUM OPINION

TURK, Chief Judge.

This is an appeal from the Order of the bankruptcy court, entered March 2, 1982,

denying the appellant's petition objecting to the allowance from the general bankruptcy estate of attorneys' fees and costs incurred by the appellee in the prosecution of the underlying adversary proceeding against the appellant, United States Fidelity & Guaranty Company ("USF & G"). Specifically, the appellant takes issue with that part of Judge Pearson's order which authorizes taxing the general estate with the attorneys' fees and costs incurred by the attorneys for the debtor and creditors' committee in the appeal of Judge Thomas Wilson's decision (rendered in USF & G's favor in the underlying adversary proceeding). The court finds that the bankruptcy court erred in holding that all fees and costs incurred by the attorneys for the debtor and the creditors' committee in appealing their adverse decision should be taxed against the estate regardless of the success of the appeal or the likelihood of success of the appeal. Consequently, that part of the bankruptcy court's order which authorizes such payments is vacated.

The debtor and plaintiff in this adversary proceeding, Albert Brothers Contracting (Albert Brothers), filed its petition under Chapter XI of the Bankruptcy Act in 1975. A creditors' committee was duly appointed pursuant to the Act. Soon thereafter, the bankruptcy court abandoned Albert Brothers' contract to construct the Martinsville Bypass. That construction contract was bonded by the appellant, USF & G. USF & G completed the project according to its performance bond and filed its proof of claim in the amount of $2,104,398.66.

On February 14, 1977, the Bankruptcy Court entered an order giving counsel for the committee authority to pursue any objection to USF & G's claim. Following entry of that order, the plaintiff commenced proceedings challenging USF & G's claim on the grounds that the completion costs were excessive and unwarranted. After extensive discovery, a three-day trial was held before Judge Wilson. In June, 1981, Judge Wilson entered an order denying the objections and allowing USF & G's claim in the full amount requested. The appellant's claim represents approximately ninety percent (90%) of the general unsecured claims in this proceeding. Judge Wilson's decision has now been appealed by the debtor's and the committee's attorney. Soon thereafter, USF & G filed an objection to the allowance of attorneys' fees from the general estate. Judge Pearson, on March 2, 1982, denied USF & G's motion that costs of the proceedings be assessed against the unsecured creditors challenging its claim. This appeal followed. Meanwhile the appeal of Judge Wilson's order has been held in abeyance pending resolution of the attorneys' fees question.

The particular question before the court is whether the fees and costs incurred by the attorneys for the debtor and the creditors' committee in appealing an adverse decision of their objections to USF & G's claim should be taxed against the general estate of the debtor.

*March 2, 1982 Order*

The court, in analyzing the question presented, first looks to the order appealed from. The bankruptcy court in its March 2, 1982 order denied USF & G's motion that the costs incurred in the adversary proceeding which questioned the validity of USF & G's claim be allocated so that the challenging parties would be required to absorb their own costs and attorneys' fees or, in essence, that their proportion of the estate be taxed with the expense of prosecuting the action. A reading of USF & G's objection to attorneys' fees with the bankruptcy court's March 2 order suggests that attorneys' fees and costs incurred during both the adversary proceeding and the appeal of the bankruptcy court's decision should be paid from the general estate without apportioning the assets.

Since that court considered the payment of attorneys' fees and costs in two different contexts (*i.e.* costs of the initial adversary proceeding and costs associated with prosecuting an appeal), the court feels compelled to discern whether the rationale set forth in the bankruptcy court's supporting memorandum opinion applies in both situations. Two primary objections to allowing the ap-

588

pellant's suggested apportionment of costs were noted by the bankruptcy court: (1) the insurmountable difficulties that would be visited upon the bankruptcy court in its attempt to administer an apportioning of the estate so that the fees and costs incurred by one group of creditors could be assessed only against those creditors' share of the distribution and (2) the chilling effect that would result from requiring an allocation of funds in that certain creditors would be inhibited from challenging potentially invalid claims because of the uncertainty involved in payment of expenses.

These two objections form a better reasoned rationale for allowing attorneys' fees and costs to be paid out of the general estate for prosecuting the adversary proceeding than for allowing payment of fees and costs out of the general estate for prosecuting an appeal. First of all, the committee could be appointed counsel by the court, as was done in this case, or a trustee could be appointed to represent the estate to prosecute claims the committee may have against either the debtor or other creditors. As the court's appointee, he may look to the estate for payment of fees and costs incurred in the adversary proceedings conducted before the bankruptcy court. No apportioning must be done; no administrative problems are created.

The chilling effect recognized by the bankruptcy court is also more applicable in the adversary proceeding context. If, as the bankruptcy court noted, a "creditor could invoke a rule of allocation of costs, such creditor's invalid claim could go unchallenged." Bankruptcy Memorandum Opinion, Record at 21. Indeed, an allocation of costs and fees to a proportionate share of the estate's funds might prevent a creditor holding a proportionately small claim from challenging a creditor holding a much larger claim. The appellee suggests that this chilling effect will also be felt at the appellate level and that this *in terrorem* effect should not be allowed.

These two objections are less significant in the context of fees and costs on appeal. The apportionment problem may be completely avoided by allowing the fees and costs incurred on appeal to be borne initially by the parties subject to possible reimbursement by the appellate court or the bankruptcy court. The bankruptcy court's order appointing counsel to represent the interests of the debtor and creditors' committee may be circumscribed to only provide for reasonable attorney's fees and costs in proceedings before that court. As circumscribed, the reasonableness (1) of the arguments presented, (2) of hours worked, (3) of quality of work performed, etc. can best be judged by the observing court. On the other hand, a broad application of the bankruptcy court's order appointing counsel breeds inequitable results. Such inequities have developed in this case. By allowing the February, 1977 order appointing counsel for the debtor and creditor's committee to dictate the actions of both the bankruptcy court and any appellate court in unanticipated, subsequent proceedings, the parties are unfairly hamstrung into unforeseen and unfair situations. The court loses the fluidity and supervisory functions inherently derived from its equitable powers.

In addition to the apportionment problem not posing insurmountable problems, the other prong of the bankruptcy court's rationale does not demand payment from the general estate of fees and costs incurred by the committee on appeal. While a chilling effect may result from taxing fees and costs against apportioned funds at the adversary proceeding level, that effect is no longer determinative on appeal. The appointment of special counsel is not a judicially approved license to litigate and appeal *ad nauseum*. In non-bankruptcy litigation, the decision to appeal is based on at least two considerations: (1) probability of success and (2) anticipated expense. The appellees under the bankruptcy court's order need not consider the costs incurred; their adversary essentially pays ninety cents of every dollar they spend. In the natural setting, as a party considers his probability of success to be great on appeal, cost is less a factor. Just as naturally, if one considers the costs of appeal insignificant, probability of success does not have to

be seriously considered. An artificial situation, however, is created when one is placed in the appellee's present position. No natural checks on the decision to appeal are present. In essence, the appellees seek to occupy a position superior to the position of litigants in other fields. Probability of success and expected costs create the normal "chill" on the appeal decision. The appellees prefer to the normal situation one where a conscious decision regarding the probability of success on appeal is replaced with an incentive to appeal. .

In short, the difficulties in administering and apportioning the estate prophesized by the bankruptcy court and echoed by the appellee can be avoided. No administration problems are created. Allow the fees and costs of the appeal to be absorbed initially by the parties on appeal. If the court so finds upon being petitioned for costs, it can then charge those parties who did not succeed on appeal their proportionate costs. The creditor is not prevented from challenging invalid claims. At the adversary proceeding level, the creditor is given his day in court and all similar creditors proportionally share in the expense. On the other hand, any chilling effect that arises from requiring the appellee to pay its own expense on appeal should arise only from that experienced by all litigants, nothing more; nothing less.

*Relevant Authority*

Appellant has presented authority supporting its position.

Protracted litigation over a claim or complications of administration caused by a particular group of creditors sometimes necessitates additional expenses of preservation or of administrative proceedings. Again the question arises, may such expense, in whole or in part, be saddled upon parties other than the Estate, and it is answered in the affirmative if the circumstances warrant.

3A *Collier on Bankruptcy* § 62.33 at 1630 (14th ed. 1975).[1] Appellant then cites a number of cases where specific funds within the bankruptcy estate were charged with the costs incurred in proceedings or actions benefiting only those funds.[2]

Appellee argues that the relief sought by USF & G should only be allowed, if at all, in liquidation cases.[3] In liquidating cases, a

---

1. *Also see, Saper v. John Viviane & Son, Inc.,* 258 F.2d 826, 828 (2d Cir.1958) ("as a general rule no compensation or reimbursement can be had unless a tangible benefit has been conferred upon the estate to the advantage of the creditors as a whole"); *In re Cheyenne Wells Elevator Corp.,* 266 F.Supp. 927, 930 (D.Colo. 1967) (citing the equitable principle which levies the charges against those who have derived primary benefit).

2. *E.g., Virginia Securities Corp. v. Patrick Orchards, Inc.,* 20 F.2d 78, 81 (4th Cir.1927) (charges incurred in preserving mortgaged property were properly charged against the fund derived from the sale of the property); *In re James MacFarlane & Co.,* 14 F.2d 876, 877 (W.D.Wash.1926) (expenses incurred in investigating status of special claims against the estate are chargeable to the specific funds which were the subject of the claims, inequitable to charge the common fund with those expenses); *In re Cheyenne Wells Elevator Corp.,* 266 F.Supp. 927 (D.Colo.1967) (The trustee was required to secure and preserve a fund derived from the sale of wheat of bankrupt and bankruptcy referee was required to determine entitlement to the fund. Expenses incident to preservation and administration of the fund were properly chargeable to the fund rather than to the general estate).

3. Appellee notes that no case cited by appellant involved a Chapter XI case or the functioning of a creditors' committee under that Chapter. *E.g., Saper v. John Viviane & Son, Inc.,* 258 F.2d 826, 828 (2d Cir.1958) (Trustee and his attorney denied compensation for work performed and expenses incurred in a reopened bankruptcy proceeding); *In re Cheyenne Wells Elevator Corp.,* 266 F.Supp. 927, 930 (D.Colo. 1967) (In this liquidating bankruptcy, the applicable creditors held warehouse receipts which exceeded the amount of grain the debtor possessed. As a consequence, all proceeds from the sale of grain belonged to the warehouse receipt holders. The general estate did not benefit. It was therefore equitable to levy the administrative charges against those receiving the primary benefit); *Virginia Securities Corp. v. Patrick Orchards, Inc.,* 20 F.2d 78 (4th Cir. 1927) (In this liquidating proceeding, the court noted that expenses are typically paid out of the general estate. If no assets are in the estate, however, expenses can be charged against the proceeds from the sale of assets benefited thereby); *In re United Funds Management Corp.,* 53 F.Supp. 467 (W.D.Wash.

duly appointed officer of the court, the trustee, is charged with preserving the assets of the estate as well as challenging any invalid claims made against it. The trustee's expenses, as well as the fees and costs incurred by his attorney, are typically chargeable to the general estate. In liquidation cases, creditors generally pay their own attorneys fees and costs. In some cases, creditors who make substantial contributions toward challenging invalid claims or in recognizing and eradicating fraud upon the court may have their attorney's fees paid from the general estate if the court so directs.

The present case, however, is not a Chapter 7 liquidation but is rather a Chapter 11 reorganization.[4] As a reorganization, argues appellee, counsel (who was given complete charge of any claim or objection regarding USF & G's claim which the debtor and creditors' committee might have) is serving both (1) the debtor, in seeking to increase the estate to the point that an excess over claims can be funnelled back into the debtor's business thereby increasing its chances of continuing as an on-going concern and (2) the general unsecured creditors, by increasing the pool of assets and improving their chances of recovering one hundred percent (100%) of their claims.

Albert Brothers' reorganization argument suggests that counsel's appointment by the bankruptcy court to represent the creditors' and debtor's interests is tantamount to a trustee in a liquidation case. Consequently, the fees and costs incurred in his representation of the committee's and debtor's inter-

ests should be charged against the general estate as are the Trustee's fees and costs.

*Counsel's Peculiar Position*

Counsel, while appointed to prosecute any claims, counter-claims, setoffs, etc. against USF & G in this case, does not serve the same functions as a trustee. Counsel in this case is aligned with the interests of the debtor and all the creditors excepting one, USF & G. While a trustee may also appear so aligned in certain adversary proceedings, his alignment is different. He is more independent by virtue of his appointment. At the time the trustee is appointed as officer of the court and representative of the estate, no alignment is apparent. In most cases, he begins with a clean slate. He investigates the claims asserted against the estate, examines the assets of the debtor, determines what actions to commence and generally decides how long the proceedings should continue. Moreover, the trustee is appointed to serve many purposes.

Counsel in this case occupies a different position. He is quite clearly appointed for a single purpose, namely, to pursue any objection to USF & G's claim. His position was created only after the alignment of interests between creditors developed. His position is terminated when the litigation which developed out of the alignment ceases. The decision to prosecute appeals is not his alone. This court does not question the wisdom or motives of the special counsel's decisions. Yet the court is aware of the possibility for opportunistic adventuring by the debtor and the committee. The order appointing counsel to represent the inter-

1943), *aff'd,* 145 F.2d 133 (8th Cir.1944) (In determining fees, a premium would be placed on efficiency and a penalty would be exacted for wastefulness); *In re James MacFarlane & Co.,* 14 F.2d 876 (W.D.Wash.1926) (After liquidating the business, expenses of the accountant who had examined the assets of certain investment funds were assessed against those funds. The expense of the master's fees and compensation to the attorneys were paid from the general estate).

4. Appellant counters that this case is essentially a liquidation. It notes that essentially all of the debtor's assets have been sold and reduced to a sum certain which is now held by escrow

agents. According to the appellant, there is very little likelihood that the debtor will continue doing business. On the contrary, if USF & G's claim is successfully challenged on appeal, the debtor's business will be reborn rather than reorganized.

The arguments over whether this bankruptcy is a reorganization or a liquidation are not dispositive. The equitable rationale of the courts in *Saper, In re Cheyenne Wells Elevator Corp., In re James MacFarlane & Co., supra,* applies to both types of cases. As poignant as the distinction may be, the difference remains obscure. Equity looks beyond such differences.

ests of the debtor and committee is not a license to continue depleting another creditor's expected recovery.

*Counsel's Function*

Appellee also argues that the committee's functions are established by Bankruptcy Rule 11–29. That rule expressly provides that the committee, in addition to consulting with the debtor in possession in connection with the administration of the estate, examine the conduct of the debtor's affairs and perform "such other services as may be in the interest of creditors." The committee is also authorized to employ counsel to assist it in the performance of these functions. Since the bankruptcy court approved the employment of counsel, argues appellee, this court should dismiss the appellant's appeal out of hand. According to appellee, its claim against USF & G represents a proper function of the committee; the elimination or reduction of USF & G's claim is in the best interests of the creditors.

The court is much persuaded by the appellee's final argument. The committee has been judicially authorized to pursue any claims that the committee may have to protect, preserve, or augment the estate as well as defeat any unreasonable claims made against the estate. The bankruptcy court's order of May 2, 1982, however, is both premature in holding and overly broad in implying that all attorneys' fees and costs incurred by the appellee in prosecuting the appeal will be paid out of the general estate. The most appropriate manner in handling appeals of cases of this type is (1) to first require the parties involved to pay attorneys' fees and costs incurred on appeal out of their own coffers and (2) then petition the court after the appeal has been prosecuted and decided to ascertain what expenses, if any, will be assessed against the general estate.

*Success on Appeal as Element*

This mode of handling appeal costs gives rise to additional comments. First, the element of success and tangible benefit to the estate are important yardsticks upon which to measure the value of attorneys' services. 3A COLLIER ON BANKRUPTCY ¶ 62.12, at 1485–1491 (14th ed. 1975); *see generally Randolph v. Scruggs,* 190 U.S. 533, 23 S.Ct. 710, 47 L.Ed. 1165 (1903). Necessarily, these yardsticks are only appropriately deployed after the court renders its ultimate decision on the claim before it. Therefore, the court in determining both (1) the amount of reasonable fees and costs to be awarded and (2) the funds from which such fees may be assessed must withhold its decision until after all the factors necessary to a full review are available.

In the usual case, the bankruptcy court, in its discretion, determines both reasonable attorneys' fees and chargeability of those fees against the estate. There is no reason, at the present time, to disturb that duty. The district court's judgment regarding the reasonableness and propriety of fees and costs should not replace the judgment of the bankruptcy court when those questions are properly addressed to that court. The ultimate decision on the merits of the appeal of the underlying adversary proceeding by the district court, however, is an essential component of the element of success on appeal and tangible benefit to the estate which the bankruptcy court must consider in its decision regarding fees.

Accordingly, this court modifies the bankruptcy court's order of May 2, 1982. Insofar as the order assesses the general estate with attorneys' fees and costs incurred by counsel for the debtor and committee in its prosecution of the adversary proceeding against USF & G at the trial level, the order is left undisturbed; that question was neither brought to nor considered by this court. That part of the order which assesses the general estate with the attorneys' fees and costs incurred by the appellee Albert Brothers in its appeal of Bankruptcy Judge Wilson's order is vacated as being inappropriately before that court. The decision to charge the general estate with the attorneys' fees incurred by one group of creditors in its action against a creditor of the same class should be withheld until after a decision is rendered on appeal. The decision regarding the amount of fees and costs and the particular fund to be charged

with the expense can then be appropriately evaluated. An order reflecting the above shall be entered.