**410**

In re WAIKIKI HOBRON
ASSOCIATES, Debtor.

William CHEE, Trustee, Plaintiff,

v.

DYNAMIC INDUSTRIES, INC., et
al., Defendants.

Adv. No. 79–00206(7).

United States Bankruptcy Court,
D. Hawaii.

July 29, 1985.

Randolph Slaton, Honolulu, Hawaii, for plaintiff.

Diane Hastert, Don J. Gelber, Neil F. Hulbert, Honolulu, Hawaii, for defendants.

MEMORANDUM DECISION
AND ORDER

JON J. CHINEN, Bankruptcy Judge.

The issues before this Court are as follows:

1. Which entities are required to make contribution to the Referee's Salary and Expense Fund ("Referee's Fund); and

2. What is the proper amount of contribution by each entity?

Following a hearing, on September 25, 1984, this Court issued its Findings of Fact and Conclusions of Law, wherein it held that the liens which were released at the beginning and at the end of the escrow were to be included in the basis for the calculation of the Referee's Fund. This means that the $4,500,000.00 paid to release the liens against the estate prior to the close of escrow are to be added to the $100,000.00 paid to the Trustee for a grand total of $4,600,000.00.

The estimated value of Debtor's property was $4,100,000.00 with the building permits preserved in existence under the protection of the bankruptcy court. In contrast, the estimated value of the Debtor's property without the permits was between $2,300,-000.00 and $2,500,000.00.

Some of the secured lienholders claim that, based on the estimated value of the property, they should not be surcharged for the Referee's Fund because they would have been paid with or without the building permits. These secured creditors cite the following cases in support of their claim: *In re Street*, 184 F.2d 710 (3rd Cir.1950) and *In re La Rowe*, 91 F.Supp. 52 (D.Minn. 1950).

And, Charles Pankow Associates contends that, since *In re Street* and *In Re La Rowe* only address the issue of whether a surcharge should be levied against a mort-

gagee and since it is not a mortgagee, it should not be sucharged for the Referee's Fund.

On the other hand, the Trustee and some of the lien creditors contend that, all entities which benefitted by the protection of the umbrella of the Bankruptcy Court should pay a portion of the amount they had received as their share of the Referee's Fund. These creditors rely on the following cases, among others: *In re Williams,* 2 B.R. 563 (Bankr.D.Del.1980) and *In re Pioneer Sample Book Co., Inc.,* 374 F.2d 953 (3rd Cir.1967).

The means used by the Trustee to pay all those who claimed to be creditors of the Debtor's estate was the Joint Development Agreement which he had executed with SAJE Ventures II. At the hearing on the Application for Approval of the Joint Development Agreement, all the creditors in unison approved the Agreement since they felt that the Agreement was the only means or hope by which they could realize the full return of their claims. There was no opposition to the Joint Development Agreement.

In *In re Williams,* 2 B.R. 563 (Bankr.D. Del.1980), the only asset of the estate was a parcel of land. Initially, it was believed that the property was encumbered by a single mortgage and that there was a small amount of equity for the unsecured creditors. The property was sold through the Bankruptcy Court without any opposition by the first mortgagee. After the sale, it was learned that there were two other liens on the property and that the proceeds realized were sufficient to pay the first mortgagee in full, a portion of the second lien and none of the third. The Court held that, since the first mortgagee had acquiesced to the bankruptcy administration of the property, it should bear a pro rata portion of the costs of the bankruptcy administration, including a contribution to the Referee's Fund.

Likewise, in *In re Pioneer Sample Book Co.,* 374 F.2d 953 (3rd Cir.1967), the debtor's property was sold at public auction through the auspices of the bankruptcy court, which resulted in a deficiency of the claim of the secured creditor holding a lien on substantially all of the estate's assets. The bankruptcy court ordered that all costs of administration, including the contribution to the Referee's Fund, be paid out of the proceeds of the sale, and that the balance be paid to the secured creditor.

In affirming the order of the bankruptcy court, the court of appeals stated as follows:

> In permitting the secured assets to be sold and administered in bankruptcy, the secured creditor Globe necessarily consented that the disposition and distribution of its security be the principal business of the trustee and receiver. Thus, the liened assets should bear their share of these costs, determined by the proportion of the entire estate represented by these assets.

Id. at 961.

In the instant case, though the estimated value of the property without the special building permits was between $2,300,000.00 and $2,500,000.00, there was no assurance that an auction would have realized such amount. Thus, all the secured creditors were in favor of the Joint Development Agreement and sought to remain within the protective walls of the bankruptcy court, rather than going forth beyond such protection and seeking their fortune in the hostile world, where forces were eagerly waiting to take away the special building permits.

▆▆▆ The Bankruptcy Court is a court of equity. Where a secured creditor seeks the protection and assistance of the bankruptcy court, it is only equitable that such secured creditor bear its share of the costs of administration. *In re Williams,* 2 B.R. 563 (Bankr.D.Del.1980); *In re Pioneer Sample Book Co.,* 374 F.2d 953 (3rd Cir. 1967).

▆▆▆ Since the secured creditors agreed to have the Bankruptcy Court supervise the development of the land in question rather than holding a foreclosure auction outside of the Bankruptcy Court and there-

by risk losing the special building permits, the Court finds both *In re Street* and *In re La Rowe*, which were relied upon by the secured creditors, not applicable to the facts of the instant case.

The Court finds that it is only fair and equitable that all creditors of Debtor's estate, secured and unsecured, who received payments during the pendency of the escrow for the sale of the property in question, bear their share of the Referee's Fund.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED as follows:

1. The Trustee will forthwith determine the total amount that had been paid to creditors of Debtor's estate, both secured and unsecured, during the pendency of escrow.

2. The Trustee will determine the amount due to the Referee's Fund based upon the amount above determined, plus the $100,000.00 paid to the Trustee by SAJE Ventures II.

3. The Trustee will then surcharge each of the creditors of Debtor's estate, secured and unsecured, paid during the pendency of escrow, a pro-rata share of the amount due the Referee's Fund.

4. Upon receipt of notice of such surcharge, the creditor will pay the amount surcharged within 30 days from the date of the notice.