In re WINDSOR COMMUNICATIONS GROUP, INC., t/a Norcross Rust Craft Greeting Card Publishers, Debtor.

WINDSOR COMMUNICATIONS GROUP, INC., t/a Norcross Rust Craft Greeting Card Publishers, Plaintiff,

v.

METROPOLITAN CONSOLIDATED IN-DUSTRIES, INC., Defendant/Third–Party Plaintiff,

v.

The CRYSTAL GROUP OF COMPANIES, Third–Party Defendant,

v.

Robert E. RUNYAN and Barbara L. Runyan, h/w, Fourth–Party Defendants.

Civ. A. Nos. 87–7631, 88–0608 and 88–0609.
Bankruptcy No. 82–03714S.
Adv. No. 84–0714.

United States District Court, E.D. Pennsylvania.

Feb. 10, 1989.

**496**

Albert A. Ciardi, Jr., David S. Fishbone, Philadelphia, Pa., for debtor/plaintiff.

Alan C. Gershenson, Philadelphia, Pa., for defendant/third-party plaintiff Metropolitan Consol. Industries, Inc.

Kenneth F. Carobus, Philadelphia, Pa., for third party defendant/The Crystal Group of Companies.

Susan L. Claypoole, Philadelphia, Pa., Ben Goodin, Chicago, Ill., for fourth-party defendants/Robert E. and Barbara L. Runyan.

## MEMORANDUM AND ORDER

FULLAM, Chief Judge.

These consolidated appeals bring before the court for review a final order entered by the Bankruptcy Court on December 15, 1987, in an adversary proceeding. 80 B.R. 712.

The debtor, Windsor Communications Group, Inc. is the corporate successor to Norcross Rust Craft Greeting Card Publishers. It will be referred to as "Windsor". Windsor is the owner of a "film-library" of designs used in the manufacture of greeting cards. In the late 1970s, Windsor delivered more than 10,000 of its original design-films to the defendant Metropolitan Consolidated Industries, Inc. ("Metropolitan") for use in the latter's greeting card manufacturing business, pursuant to a license agreement. Under the terms of that arrangement, as later extended, Metropolitan was required to return the films to Windsor in 1982. It failed to do so and, in due course, Windsor—now in bankruptcy—brought this adversary proceeding to obtain either the films or their value, together with damages.

In 1979, Metropolitan had come under the protection of the Bankruptcy Court in Massachusetts, and it continued to function as a debtor in possession. It was required to vacate its Massachusetts plant on fairly short notice, with the result that various items of personal property located in its Massachusetts plant were hurriedly trucked to its other manufacturing facility in Waukegan, Illinois. Among the items thus transferred were a large quantity of the films belonging to Windsor.

The real estate in which Metropolitan's Waukegan operations were conducted was owned by Robert E. Runyan and Barbara L. Runyan, his wife. In 1983, they formed a corporation which purchased the Waukegan manufacturing operation from Metropolitan. In 1985, the Runyans sold the business to the third-party defendant, the Crystal Group of Companies ("Crystal").

When the Waukegan business was sold to Crystal in 1985, a library of some 14,000 films was apparently included in the sale. Windsor, Metropolitan, and the Runyans all agree, and the Bankruptcy Court has found as a fact—in findings which are not clearly erroneous—that 6,891 of these films belong to Windsor, having been part of the original bailment to Metropolitan which should have been returned to Windsor in 1982.

Windsor first made formal demand on Metropolitan for the return of the films in 1984. Metropolitan forwarded a copy of that demand to Crystal, but Crystal denied any knowledge of the films. The responsible official for Crystal at the Waukegan plant, one Splayt who was the general manager, had also served as general manager when the plant was owned by Metropolitan and the Runyans.

As a result of further investigation, with the approval and encouragement of the Bankruptcy Court, representatives of Metropolitan and Windsor visited the Waukegan plant and established, to their satisfaction at least, that 6,891 of the films in Crystal's possession did belong to Windsor.

Metropolitan joined Crystal as a third-party defendant in this adversary proceeding. Crystal joined the Runyans as fourth-party defendants, seeking indemnification and damages for breach of warranty of title, and the Runyans cross-claimed against Metropolitan for breach of warranty.

By the time Crystal was joined as a third-party defendant in this case, Crystal itself was undergoing bankruptcy reorganization, in the Northern District of Illinois. The automatic stay in that proceeding has

been lifted, but only to the extent necessary for the resolution of all claims asserted by or against Crystal in the third-party complaint and its own fourth-party complaint.

The rulings of the Bankruptcy Court involved in the present appeal may be summarized as follows: Windsor is entitled to recover damages from Metropolitan, and is entitled to get back the missing films. Crystal is required to surrender the films in question, and is also liable on the third-party complaint for damages for its wrongful retention of the films from and after a specified date in 1986, when the identity of the films as property of Windsor was established; these damages amount to some $13,782, plus $1,607.19 in travel costs associated with the investigation. The claims of Crystal and the Runyans were dismissed.

Crystal has filed the present appeal. While the appeal was pending, Windsor and Metropolitan settled their differences; Metropolitan has paid Windsor a substantial sum of money, and has assigned to Windsor all of its claims against the other parties.

## I.  *True Ownership the 6,891 Films*

■ Crystal argues that the record is devoid of evidence establishing that the films in question are the same films which Windsor originally licensed to Metropolitan. The bankruptcy judge found to the contrary and, as noted above, I am satisfied that his findings are adequately supported by the evidence. There can be no doubt that more than 10,000 of such films were originally delivered, pursuant to the bailment, to Metropolitan. Substantially all of Metropolitan's personal property at its Massachusetts plant found its way to the Waukegan facility. Without more, this would justify the inference that the missing films may very well have been among the property transferred. It is conceded that the sample films which were examined closely bear the Norcross name, and that the persons who inspected the films and have attested to their ownership were thoroughly familiar with these matters. Significantly, Crystal did not offer any evidence

which would support a different conclusion, preferring to rely upon the alleged hearsay nature of some of the business records involved, and upon what it contends was Windsor's failure to make out a prima facie case. All in all, I am not disposed to disturb the bankruptcy judge's findings. For present purposes, Windsor is the true owner of the 6,891 films.

## II.  *Crystal's Liability*

■ Crystal correctly asserts that, when it purchased the Waukegan operation from the Runyans, it acquired lawful possession of these films, and that, as the rightful possessor, its rights are superior to the rights of all other persons except the true owner. But, says Crystal, the true owner, Windsor, has made no direct claim against Crystal for restoration of the films. The only entity which has sued Crystal for possession of the films is Metropolitan, which, as a converter of the films, obviously has no lawful right to get them back from Crystal. Indeed, it is argued, Crystal is entitled to retain the films unless and until the Bankruptcy Court in the Northern District of Illinois, or some other court which is free to do so by reason of an action of that Bankruptcy Court, decides otherwise.

This is an interesting line of argument but not a persuasive one. Windsor sued Metropolitan for the return of the film, as well as for damages; and Metropolitan's third-party complaint against Crystal asserted that, if all or any part of Windsor's claims were upheld, Crystal, as third-party defendant, would be liable for the claims Windsor was asserting against Metropolitan.

In the circumstances of this case, the third-party joinder provided an adequate procedural mechanism to enable Metropolitan to act as a conduit between the true owner and the present possessor, to whom Metropolitan had inadvertently and improperly caused the film to be transferred. The Bankruptcy Court's order in this case did not exceed the authorization granted by the Illinois Bankruptcy Court in granting relief from the automatic stay.

The rights of Windsor, as the true owner, are superior to those of Crystal, the possessor. But Windsor should not prevail if Crystal acquired valid title, as well as possession. It is therefore necessary to examine that issue.

When Metropolitan sold the Waukegan business to the Runyans, the parties' agreement included the following:

"Whereas the seller desires to sell and the buyer desires to purchase the assets ... of the business

"(1) the seller hereby sells and the buyer hereby buys the assets of the seller's business as follows:

"(a) [Business names.]

"(b) [Good will.]

"(c) All fixed assets, fixtures and equipment owned by the seller located at 53 Noll Street, Waukegan, Illinois.

"(d) [Leasehold improvements.]

"(e) All inventories of greeting cards presently located at 53 Noll Street, Waukegan, Illinois.

"(f) [Accounts receivable.]

"(g) [Bank accounts.]"

Both Metropolitan and the Runyans insist that this agreement did not achieve a conveyance of the films now in dispute since they were not "fixed assets, fixtures and equipment," and, in any event, were not "owned by the seller". They also argue that, at the very least, the agreement is ambiguous, thus opening the door to parol evidence; and their unrebutted evidence was to the effect that neither party intended to include these particular films in the sale. I agree that, by reason of these arguments and concessions, neither Metropolitan nor the Runyans are now in a position to assert, *vis-a-vis* each other, that the Runyans acquired title in 1983. This eliminates any possible claim for breach of warranty by the Runyans against Metropolitan, but it does not necessarily shed much light on the validity of Crystal's title. That is, the agreements and concessions of Metropolitan and Runyan are not binding upon Crystal, which is free to argue that in the context of the greeting card industry, these films are plainly within the general definition of "fixed assets, fixtures and equip-

ment," and that both parties then believed that the seller owned the films which were included in the Waukegan plant, and both parties obviously thought that all of these films were being sold to the Runyans.

■ Thus, I am not disposed to resolve the issue of Crystal's legal title on the basis of a finding that the Runyans never had an interest in the films which they could convey. Rather, I am inclined to believe the Runyans' title was merely voidable; and they might well have been able to convey an indefeasible title if Crystal could qualify as a bona fide purchaser for value. But it is indisputably clear that, by the time Crystal purchased the business from the Runyans, Crystal was on notice of Windsor's claim of ownership, and was aware that it might be joined as a third-party defendant in this litigation.

Moreover, the fact that the same individual served as general manager for each of the successive owners of the Waukegan facility from 1975 to 1987, and that he had repeatedly denied any knowledge of the missing films, tends to reduce the likelihood of a genuinely innocent purchaser for value without notice.

I therefore conclude that the bankruptcy judge correctly ordered Crystal to surrender the films to Windsor (via Metropolitan).

III. *Crystal's Indemnity Claims*

■ When Crystal bought the business from the Runyans in 1985, the transaction took the form of a sale of 100% of the stock of the predecessor corporation. In the written agreement, the Runyans represented that the corporation "has good and marketable title to all its properties and assets," including those reflected in the balance sheet, and that there were no potential claims against it except those listed in the attached schedule. The attached schedule specifically listed this adversary proceeding, with the following explanation, "Crystal Greetings, Inc. is involved only as a potential witness at this point, although it could be joined as a third-party defendant, particularly if the 'film library' which the plaintiff is seeking is alleged to be in Crys-

tal's possession." The agreement further provided:

"Sellers [*i.e.*, the Runyans] specifically warrant and represent that they will hold buyer [*i.e.*, Crystal] harmless from any and all liability (including damages, court costs and attorneys' fees) from any litigation that has been or shall be filed against Crystal or buyer arising out of any matters which may have occurred due to or from the operation of the business of Crystal prior to the date of this agreement, including but not limited to the cases set forth on Exhibit 'A', [and that] sellers shall bear all the ongoing costs of defense in said suits, including court costs and attorneys' fees."

Notwithstanding these sweeping indemnity provisions, the bankruptcy judge dismissed Crystal's claims against the Runyans. I agree with this decision in part, but not entirely.

The bankruptcy judge correctly concluded that Crystal is liable in damages for its wrongful retention of the films since 1986, when they were first definitively identified as belonging to Windsor. I agree with the Runyans that this item of damages was caused by the wrongful conversion committed in 1986 by Crystal, and is not within the coverage of the 1985 indemnity agreement. Alternatively, Crystal had an obligation to mitigate the damages for which indemnification might be sought under the 1985 agreement, and its stubborn refusal to surrender the films after 1986 was inconsistent with that obligation.

On the other hand, with knowledge of this litigation, the Runyans warranted their (or, more precisely, their corporation's) ownership of all of the assets at the Waukegan plant, and agreed to hold Crystal harmless from the claims of ownership then being asserted in this litigation. Since Crystal is being required to surrender the films because Windsor is the rightful owner, it is difficult to avoid the conclusion that Crystal is entitled to indemnification from the Runyans in at least some amount, for the loss of the films. This obligation to indemnify is independent of, and unaffect-

ed by, Crystal's later independent act of conversion.

The Runyans seek to avoid this result by arguing that Windsor's films were never included in the sale to Crystal, hence were never covered by the indemnification agreement, because neither party to that transaction was aware that these particular films were on the premises. The principal basis for this assertion seems to be the stipulation between Metropolitan and Runyan that neither party to that earlier transaction had intended to convey the Windsor films to the Runyans.

There are several flaws in that argument. In the first place, the bankruptcy judge did not make any specific finding of fact to that effect; and, as I view the record, no such finding would have been supportable. The most that can be said is that neither Metropolitan nor the Runyans realized that Metropolitan did not own all of the films in the Waukegan facility at the time of the sale, and that, if either party had realized that some of Windsor's films were there, they would not have intended to include them in the sale. But a mistaken belief as to ownership is a far cry from total ignorance of the films' existence. It is entirely clear from the record that both Metropolitan and the Runyans knew that a large number of films were being transferred, and that the films which later turned out to belong to Windsor were among them.

More importantly, perhaps, it is quite clear that, by the time the Runyans executed the indemnification agreement in 1985, both they and Crystal were aware of Windsor's claims. Having expressly agreed to indemnify Crystal from these very claims, the Runyans obviously cannot now be heard to argue that they did not warrant title to these particular films.

I have concluded, therefore, that insofar as the order appealed from dismissed Crystal's claims against the Runyans for indemnification against losses associated with surrender of the films to Windsor, the order must be vacated and the case remanded to the Bankruptcy Court for further proceedings. I express no view as to what

damages, if any, Crystal may be able to establish it has sustained. I observe merely that the $10 per-film value applied by the bankruptcy judge in calculating the damages due Windsor from Metropolitan by reason of the latter's 1982 conversion may or may not be a realistic measure of Crystal's loss, if any. There is evidence suggesting that the condition and utility of these films may have diminished by the time of the 1985 purchase by Crystal, and may have continued to decline; and that Crystal may have derived some economic benefit from these films in the interim. I note, also, that the indemnification agreement appears to include litigation costs and counsel fees, but that these items, too, should be evaluated in light of Crystal's obligation to mitigate damages.