## McMILLAN v. UNITED STATES FIDELITY & GUARANTY CO. et al.

Circuit Court of Appeals, Eighth Circuit.
October 5, 1927.

No. 7768.

1. **Bankruptcy ⊕⟿223—Referee held not entitled to commission on sums paid by trustee to attorneys (Bankruptcy Act, §§ 40, 48 [11 USCA §§ 68, 76]).**

Under Bankruptcy Act, § 40 (11 USCA § 68), referee in bankruptcy *held* not entitled to commission on sums paid by trustee to attorneys for bankrupt and for petitioning creditors, particularly in view of sections 1 (9) and 48 of the act (11 USCA §§ 1, 76).

2. **Bankruptcy ⊕⟿223—Referee's compensation is based on disbursements made to creditors at time of filing petition (Bankruptcy Act, § 40 [11 USCA § 68]).**

Compensation of referee in bankruptcy under Bankruptcy Act, § 40 (11 USCA § 68), is based on disbursements made to creditors, who were such at time of filing petition in bankruptcy.

3. **Bankruptcy ⊕⟿223—Referee held not entitled to commission on proceeds of foreclosure sale of property surrendered to receiver by trustee (Bankruptcy Act, § 40 [11 USCA § 68]).**

Referee in bankruptcy *held* not entitled, under Bankruptcy Act, § 40 (11 USCA § 68), to commission on sum realized from foreclosure of property surrendered to receiver appointed in foreclosure proceedings, and proceeds of which were never received by trustee nor distributed by him.

4. **Bankruptcy ⊕⟿223—Referee is not entitled to commission on quantum meruit (Bankruptcy Act, § 72 [11 USCA § 112]).**

Under Bankruptcy Act, § 72 (11 USCA § 112), a referee in bankruptcy is not entitled to compensation based on quantum meruit.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Franklin E. Kennamer, Judge.

In the matter of the bankruptcy of Harold Wallace. From a decree (14 F.[2d] 534) refusing to allow certain fees, claimed by R. McMillan as referee, the referee appeals; the United States Fidelity & Guaranty Company and others being appellees. Affirmed.

H. A. Ledbetter and H. E. Ledbetter, both of Ardmore, Okl., for appellant.

C. B. Ames and J. C. Monnet, Jr., both of Oklahoma City, Okl., and W. B. Johnson, of Ardmore, Okl. (Ames, Lowe & Cochran, of Oklahoma City, Okl., and Johnson, McGill & Johnson, of Ardmore, Okl., of counsel), for appellees.

Before KENYON, Circuit Judge, and MOLYNEAUX and JOHN B. SANBORN, District Judges.

KENYON, Circuit Judge. The United States District Court for the Eastern District of Oklahoma refused to allow appellant McMillan, referee in bankruptcy, certain fees claimed by him in what was known as the Harold Wallace bankruptcy case. 14 F.[2d] 534. During the litigation of said estate, attorney's fees were paid by the trustee to attorneys for said trustee, to attorneys for the bankrupt, and to attorneys for petitioning creditors in the aggregate of $15,500. Upon this amount appellant sought to charge a fee of 1 per cent. He also claimed 1 per cent. of $135,000, an assumed valuation of certain property known as the Ketch-Wallace property, consisting of 20 acres of producing oil property, in which the bankrupt owned an undivided one-half interest, and which was disposed of in a foreclosure proceeding. While other fees were involved in the court's action, this appeal is solely as to that part of the court's order refusing to allow fees in these two matters.

[1] Was the referee entitled to a commission on the sums paid by the trustee to attorneys?

Section 40 of the Bankruptcy Act of 1898 (U. S. Comp. Stat., Compact Edition, 1918, § 9624 [11 USCA § 68]) provides for the full compensation of referees for their services a fee of $15 deposited with the clerk at the time the petition is filed in each case, and 25 cents for every proof of claim filed for allowance, "and from estates which have been administered before them one per centum commissions on all moneys *disbursed to creditors* by the trustee." Before the change in the statute the referee received commissions on "sums to be paid as dividends and commissions." 30 Stat. 556. If the fees paid to attorneys for the bankrupt, the petitioning creditors and the trustee was "money disbursed to creditors" within the meaning of section 40 of the act he was entitled to the commission.

Section 48 (11 USCA § 76) provides for the compensation of trustees, and under said section, in addition to a certain fixed fee, he receives a commission "on all moneys disbursed or turned over to any person." There is to be noted a difference under these sections in the compensation of the trustee and of the receiver as to commissions on moneys of the estate. The Bankruptcy Act defines the meaning of the term "creditor" as follows: "(9) 'Creditor' shall include any one who owns a demand or claim provable in bankruptcy, and may include his duly authorized agent, attorney, or proxy." Section 1 (11 USCA § 1).

[2] If the trustee should, under an order of

court, to better wind up the affairs of, and conserve the property of, the bankrupt, carry on the business and incur indebtedness, can it be that the creditors, whose claims are created during that time by the exigencies of the situation, are included in the terms of section 40, and, if the trustee makes payments to them, can the referee secure a commission thereon? The authorities are all to the contrary. We are satisfied that a referee's compensation as to the commission of 1 per cent. under section 40, is based on disbursements made to creditors who were such at the time of filing the petition in bankruptcy. Bray v. Johnson et al. (C. C. A.) 166 F. 57; In re M. F. Rourke Co. (D. C.) 209 F. 877; In re J. Bacon & Sons (D. C.) 224 F. 764; Loveland on Bankruptcy (4th Ed.) p. 232; Stroheim et al. v. Perry & Whitney Co. et al. (C. C. A.) 175 F. 52; 3 Remington on Bankruptcy, § 2103, p. 634.

In re Shippers' Compress Company (D. C.) 4 F.(2d) 256, it is said: "Only upon disbursements finally made to creditors, who were such at the time of bankruptcy, can the referee's compensation generally be allowed. Expenses and other disbursements in running the business, which arise by reason thereof, cannot be included." We think this is a correct statement of the law.

Further, some of the attorney's fees here under discussion were allowed merely as part of the administrative expenses. In Remington on Bankruptcy, vol. 2, page 1265, it is said: "Reasonable attorneys' fees may be allowed out of the estate, to the petitioning creditors and the bankrupt by express statutory provision, and to the trustee and receiver as part of their expenses." And again, on page 1276 of Remington on Bankruptcy, vol. 2: "Although not expressly provided for by the statute, as are attorney's fees for petitioning creditors and bankrupts, yet attorney's fees are allowable in proper cases as part of the trustee's expenses." A referee is not entitled to a commission on moneys paid out for administrative expenses. In re Motridge (C. C. A.) 258 F. 229.

The case relied on by appellant is Oldham v. Parker, 5 F.(2d) 682, a case in the United States District Court for the Northern District of Texas. It is there held that a referee in bankruptcy is entitled to a 1 per cent. commission on amounts paid by the trustee to attorneys. It is the theory of that case, as we read it, that section 64 of the Bankruptcy Act (11 USCA § 104), which provides that certain debts shall have priority, including one reasonable attorney's fee for professional services actually rendered, makes such fees of attorneys preferred claims, and that therefore the attorneys become creditors within the meaning of the word as used in section 40 of the Bankruptcy Act. If this be correct, then the referee would be entitled to commission upon the fees and mileage paid to witnesses, and all other costs of administration, as these are likewise given priority under section 64. Oldham v. Parker, supra, is out of line with the established weight of authority. The reasoning in In re Motridge (C. C. A.) 258 F. 229, is, we think, more persuasive.

As to the Ketch-Wallace matter, the trial court clearly stated the facts in its opinion. We quote therefrom as follows: "The bankrupt owned an undivided one-half interest in an oil-producing property which was mortgaged for more than its value. Foreclosure proceedings were instituted in the United States District Court and a receiver appointed to take over the property. The trustee in bankruptcy surrendered the property to the receiver in the equity foreclosure suit upon proper order of the court. The property was sold and the proceeds paid to the mortgagees in the foreclosure action. The other mortgagees took the mortgaged property in lieu of filing claims and the value of these properties was fixed at $135,000. The referee claims as part of his fee, a commission of 1 per centum upon the $135,000, or the sum of $1,350. It is the opinion of the court that the referee is not entitled to the commission claimed, for the reason that these transactions do not constitute disbursements to creditors by the trusteee, as provided in the Bankruptcy Act. Had the property been sold by the trustee free of the mortgages, it would have been administered in bankruptcy, and the referee would have been entitled to a commission upon the amount realized which was disbursed to creditors, whether secured or unsecured. However, in the instant case, the property was not sold by the trustee or the bankruptcy court, it was not disbursed to creditors, and it was not administered in bankruptcy; it was turned over to the United States District Court, which had acquired jurisdiction by reason of foreclosure proceedings having been instituted prior to bankruptcy, as well as to the mortgagees."

[3] It is true the bankruptcy court took over the Ketch-Wallace property and controlled it for approximately 16 months, but it is perfectly apparent from the record that there was absolutely no equity in the property for the unsecured creditors. It was mortgaged, and had liens on it, for more than it was worth. Appellant claims its value was $135,-

000; but the evidence seems to establish the figure at approximately $75,000. The trustee in bankruptcy surrendered this property to the receiver appointed in the foreclosure proceedings in the United States court. The proceeds of the sale were never received by the trustee, never under his control, and never distributed by him. It appears that the secured creditors now have claims filed against the estate for the difference between the amount obtained from the foreclosure sale and their claims. Under these circumstances, no part of the alleged $135,000 was disbursed to creditors by the trustee, and hence the referee was not entitled to any commission thereon.

We quote from volume 6 of Remington on Bankruptcy, p. 226, as follows: "Where the mere equity is sold, without the marshaling of liens and the sale of the property free and clear therefrom, with the consequent responsibilities of such proceedings, the commissions of the receiver and trustee, as also of the referee, are only to be computed upon the amount received from such equity. This is entirely different from the case where the property is sold clear and free of liens but the purchaser happens to be a lienholder and applies his lien in part payment. In the latter case it is still a sale clear and free of liens, and, equally as in cases of other purchasers, the receiver and trustee are entitled to commissions on the entire amount of the sale and, if the lienholder is also a creditor, the referee likewise is entitled thereto."

In Lucas v. Sherry et al. (C. C. A.) 284 F. 965, 967, it was held the mortgagee was not liable for any commission upon the value of the mortgaged property abandoned to him by the trustee in bankruptcy. The court said: "The petition of the trustee, the order of the court thereon, and the conveyance of the trustee were in no sense a foreclosure of said mortgage or a sale of said property by said trustee, but a surrender of the jurisdiction of the bankrupt court over the same, and a surrender thereof to the lien creditors, on the ground that there was no equity therein for the general creditors. There were no moneys collected therefrom, actually or constructively, by the trustee in bankruptcy, or paid or distributed by him to the mortgage creditor."

The case of American Surety Company v. Freed et al. (C. C. A.) 224 F. 333, 339, is a case where the assets of the bankrupt were mortgaged to secure claims. In the attempt to preserve the bankrupt's property a plan was devised to transfer the assets to a new corporation, the secured and unsecured cred-

itors to receive stock for their claims, and in carrying out said plan the assets were sold for a small amount, subject to the liens. Commissions of referee were claimed, and it was held that such commissions must be determined on the cash actually received, as both the referee and trustee fees were based on commissions on moneys distributed and disbursed. The court, after discussing the sale of the property subject to the liens and the private arrangement made by the creditors, said:

"The result, so far as the estate is concerned, was the release of debts which, though not proven, might have been proven; and in discharging the indebtedness of the estate by resorting to the property secured by the lien, the secured creditors chose to do by agreement what they could have done by foreclosure proceedings. As no claim for commissions could have been made by the referee and trustee, based upon the amount of indebtedness discharged by foreclosure proceedings instituted and prosecuted by the lienors without relation to the bankruptcy administration, is it not equally certain that no claim for commissions can be based upon a like amount of indebtedness discharged by other means employed by the lienors in reducing their securities either to cash or possession?"

[4] However, it is suggested in the assignment of errors, as well as in the statement made by appellant to the court at the time of trial, that if appellant was not entitled to his commission of 1 per cent. on the $135,000, in equity and good conscience he was entitled to reasonable compensation on a basis of quantum meruit. This somewhat novel suggestion, if carried into effect, would fly in the face of section 72 of the Bankruptcy Act (11 USCA § 112): "That neither the referee, receiver, marshal, nor trustee shall in any form or guise receive, nor shall the court allow him, any other or further compensation for his services than that expressly authorized and prescribed in this act." There is no provision of law for compensation to a referee based on quantum meruit. It would open the door to the very abuses that section 72 was enacted to prevent.

This court has had occasion in Folda v. Zilmer et al., 14 F.(2d) 843, to call attention to some of the abuses growing up in the administration of the Bankruptcy Act in the appointment of referees as "special masters," and to call attention to the "imperative prohibition" of section 72 of the Act and section 2 of General Order No. 35 promulgated by the Supreme Court of the Unit-

ed States, reading as follows: "The compensation of referees prescribed by this act shall be in full compensation for all services performed by them under the act or under these general orders."

The purpose of the Bankruptcy Act was to conserve the property of the bankrupt—not to have the estate absorbed by a multiplicity of fees. The 1903 amendment to the Bankruptcy Act, whereby it was provided that the referee should receive 1 per cent. of the moneys disbursed to creditors, instead of commissions on sums to be paid as dividends and commissions increased to some extent the compensation of referees. With this they must be satisfied until the Congress makes different provision, and not attempt to secure further compensation than that clearly prescribed in the Act.

The decision of the trial court was correct as to both propositions, and the decree thereof is affirmed.