**In re PANCOASTAL, INC.**

**Bankruptcy No. 80–380.**

United States Bankruptcy Court, D. Delaware.

Aug. 9, 1989.

Michael D. Goldman, Laurie Selber Silverstein, Wilmington, Del., for trustee.

---

## ORDER TO AUTHORIZE THE PAYMENT OF COMPENSATION TO THE TRUSTEE

HELEN S. BALICK, Bankruptcy Judge.

Upon consideration of the Application of Trustee for Interim Compensation for services rendered by Bernard Isaacson, Trustee ("Trustee") for Pancoastal, Inc. (the "Debtor") and after a hearing on the Trustee's application,

THE COURT HEREBY FINDS:

### CONCLUSIONS OF FACT

1. This bankruptcy proceeding was initiated on October 16, 1980 when the Debtor filed a petition for relief under Chapter 7 of the United States Bankruptcy Code.

2. On October 22, 1980, Bernard Isaacson was appointed Interim Trustee of the Debtor's estate by the United States Trustee.

3. On November 26, 1980, a meeting of the Debtor's creditors was held in Wilmington, Delaware. Since no Trustee was elected at that meeting and pursuant to 11 U.S.C. § 702(d), the Trustee automatically continued to be Debtor's Trustee.

4. Since October 22, 1980, the Trustee, in accordance with his duties as Trustee, has continuously administered the Debtor's estate.

5. The total time spent by the Trustee administering the estate from November 6, 1980 through April 11, 1989 is 436 hours.

6. The Trustee submitted a detailed hourly log describing the services rendered, which services were necessary and appropriate to the Trustee's discharge of his duties and of significant benefit to the estate.

7. Among the significant beneficial services provided on behalf of the estate by the Trustee are the following: attendance at numerous court proceedings in connection with this proceeding, a complete investigation of the Debtor's assets, financial records and claims against the Debtor, negotiation and settling of litigation with Pantepec International, investment and supervision of funds brought into the estate, appraisal and eventual sale of three oil mining leases in Nigeria, assistance in the preparation of filings for the Securities and Exchange Commission and monitoring the SEC investigation of the Buckley Companies, negotiation of a reduction of the largest claim against the Debtor from $819,807.97 to $250,000, investigation of several businesses interested in a business combi-

nation with the Debtor, managing the affairs of Mountain Minerals Corporation, paying all allowed administrative, priority and unsecured claims, presently assisting counsel in the distribution of the surplus money to the Debtor's former shareholders and assisting counsel with preparation of the Debtor's federal income tax return for the calendar years 1981–87.

8. At the time of the Trustee's appointment, the Debtor had liquid assets of $1212.32 and liabilities of $897,942.11. Subsequently, the Trustee negotiated a settlement with The Catawba Corporation and successfully objected to several claims thereby reducing the liabilities of the Debtor to $322,696.38. The Trustee liquidated the remaining assets and after satisfaction of all allowed administrative, priority and unsecured claims filed with the Court, the estate presently has a surplus in excess of $1,000,000.

9. The Trustee's normal hourly charge for similar work was $125 per hour from November 1980 to January of 1984 and $150 per hour from January, 1984 to April 1989. Based upon the number of hours expended by the Trustee on behalf of the estate and the aforementioned hourly charges, the Trustee would ordinarily charge $61,756.25 for his services.

## CONCLUSIONS OF LAW

■ 10. Pursuant to 11 U.S.C. § 326(a), compensation for a trustee is based upon a statutory percentage of "moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims." In the present case, the Trustee's compensation, based upon the statutory percentages, equals $4,106.96.[1]

11. This Court recognizes that § 326 has been interpreted as limiting the compensation that a trustee is entitled to receive. *In re Roco Corp.*, 64 B.R. 499 (D.R. I.1986). However, under certain circumstances, some courts have used their equitable powers to carve out an exception to this provision. For example, in a case where there has been no distribution to any party other than the debtor, the prohibition against compensation to the trustee based upon money turned over to the debtor has been held inapplicable. For example, in *In re Flying S. Land & Cattle Company, Inc.*, 23 B.R. 56 (Bankr.C.D.Cal.1982), involving two separate bankruptcy cases, the debtors requested dismissal of the bankruptcy proceeding because the trustee resolved the financial problems of the debtors thereby enabling the debtors to proceed outside of bankruptcy. The debtors also agreed to the payment of a fee to the trustee. The Administrative Office of the United States Courts objected to the amount of compensation sought by the trustee in his fee application on the basis that 11 U.S.C. § 326(a) excludes from the calculation of compensation, moneys turned over to the debtor. The court responded by stating that the debtor would be unjustly enriched unless the trustee is compensated for services rendered and, therefore, "[t]he limitations on trustee compensation in § 326(a) should not apply when funds are returned to the debtor because of a dismissal." *Id.* at 58.

12. Similarly, in *In the Matter of Pray* 37 B.R. 27 (Bankr.M.D.Fla 1983), the debtors filed a Chapter 7 case and a trustee was appointed. The trustee hired special counsel to handle a pending personal injury claim of the estate. After the claim was settled for $10,000, the debtors moved to dismiss the case because of the change in their financial position. The trustee subsequently filed a fee application. On rehear-

---

**1.** 11 U.S.C. § 326 was amended in 1984 by the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA") to increase the compensation rate structure. Section 553(a) of BAFJA, Pub.L. No. 98–353, enacted July 10, 1984, provides that the amendments to Title 11 of the United States Code, with exceptions not here relevant, are effective as to cases filed 90 days after the date of enactment. Therefore, the Trustee in the present case must use the pre-amendment percentages since this case was filed in 1980. *See In re Burke Mountain Recreation, Inc.,* 64 B.R. 799 (Bankr.D.Vt.1986); *But cf. In re Yale Mining Corp.,* 59 B.R. 302 (Bankr.W.D.Va.1986) (case filed before effective date of BAFJA amendments but judge utilized statutory maximums of § 326(a) as amended in 1984 without discussion).

ing of the trustee's motion, the court held that,

"... in the case of a voluntary dismissal by the debtor and when there is no distribution made to anyone but to the debtor, § 326 is not applicable. Thus, in the present instance, the Court is empowered to award compensation to the trustee on the basis of quantum meruit in spite of the fact that all funds are returned to the debtor and the trustee makes no distribution to creditors."

*Id.* at 30; *Cf. Matter of Parameswaran,* 64 B.R. 341 (Bankr.S.D.N.Y.1986) (compensation awarded to trustee where case converted to Chapter 13 after trustee's objection to discharge in bankruptcy was sustained and no assets of debtor were converted to cash during the pendency of Chapter 7 proceeding). The court then evaluated the nature and extent of the services rendered in determining the appropriate amount of compensation. *Pray,* 37 B.R. at 30.

13. The conclusion to be drawn from the preceding cases is that § 326(a) is not always strictly construed and exceptions will be made when the equities so dictate. Given the result obtained, the great disparity between the actual value of the Trustee's services in this case and the amount permitted by § 326(a) presents a situation where the equities require a less than strict adherence to the limitations of § 326(a).

14. The broad purpose underlying the bankruptcy law is to provide for the equitable distribution of the debtor's estate to its creditors. *Matter of Kessler,* 23 B.R. 722 (Bankr.S.D.N.Y.1982). To that end this case represents the ultimate success. The Trustee has faithfully and diligently administered the estate of the Debtor for almost nine years. The Trustee successfully defended the estate against claims and brought back into the estate valuable property to the benefit of all creditors. The Trustee's vigilance and hard work not only resulted in the payment in full of all allowed administrative, priority and unsecured claims, but the estate now enjoys a surplus of over $1,000,000 that awaits distribution to the Debtor's former shareholders.

15. Given the time, effort and dedication of the Trustee to this proceeding, the compensation requested is reasonable under the circumstances.

16. Therefore, on the basis of quantum meruit, the Trustee is entitled to the compensation sought for outstanding services rendered.

IT IS HEREBY ORDERED this 9th day of August, 1989 that the estate pay to the Trustee compensation in the amount of $61,756.25 and reimbursement for expenses in the amount of $150.32.