**In re ORIENT RIVER INVESTMENTS, LTD., t/a New York City Shoes, Debtor.**

**Bankruptcy No. 89–12206S.**

United States Bankruptcy Court, E.D. Pennsylvania.

Nov. 21, 1991.

Morton C. Batt, Cherry Hill, N.J., Trustee.

Earl T. Stamm, Blank Rome Comisky & McCauley, Philadelphia, Pa., for Trustee.

Steven B. Mirow, Philadelphia, Pa., for debtor and pro se.

Frederic Baker, Asst. U.S. Trustee, Philadelphia, Pa.

Susan Verbonitz, Patterson & Weir, Philadelphia, Pa., for Liberty Bank.

OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

At issue is a seemingly-simple issue of interpretation of 11 U.S.C. § 326(a), which fixes the maximum compensation allowable to bankruptcy trustees pursuant to a prescribed formula. That issue is whether the phrase allowing computation of compensation "upon all moneys disbursed or turned over in the case by the trustee to parties in interest" includes sums paid by a trustee in operation of a debtor's business. We hold that, considering the extensive scope of duties which operating trustees perform for debtors' estates, beyond that of trustees who merely liquidate debtors' estates, operating costs are properly included in the computation.

This is the third published Opinion arising out of the case of ORIENT RIVER INVESTMENTS, INC. ("the Debtor"). *See* 105 B.R. 790 (Bankr.E.D.Pa.1989), *aff'd,* C.A. No. 89–8175 (E.D.Pa. July 19, 1991), *appeal docketed,* No. 91–1723 (3d Cir.) (*"Orient River I"*); and 112 B.R. 126 (Bankr.E.D.Pa.1990) (*"Orient River II"*). The history of the Debtor, as the successor of another debtor in this court, New York City Shoes, Inc., is related in those Opinions in some detail, and will not be repeated here. *See Orient River II,* 112 B.R. at 128, and *Orient River I,* 105 B.R. at 791.

On March 23, 1990, two days after the publication of *Orient River II,* the United States Trustee filed a motion to convert this case to Chapter 7, alleging that the

Debtor's principal had returned to his native Taiwan and abandoned the business. Although initially we denied the motion and appointed MORTON BATT as Chapter 11 Trustee ("the Trustee") on March 29, 1990, the Trustee himself then filed another motion to convert the case. The case was converted to a Chapter 7 case on April 5, 1990, and the Trustee remained in place as Chapter 7 Trustee.

Several policy decisions of the Trustee in the operation of the Debtor were vigorously contested by the Debtor's counsel, Stephen E. Mirow, Esquire ("Mirow"), both on behalf of the Debtor and on his own behalf. Mirow filed a motion seeking removal of the Trustee on May 3, 1990, which was denied, after an expedited hearing, on May 10, 1990. On May 18, 1990, Mirow filed a motion seeking reconsideration of this decision, which was in turn denied on June 21, 1990. Ultimately, all of the Debtor's retail outlets were closed and this case lapsed into a liquidation mode. The vigor of oversight of the Trustee's services by Mirow and Wayne Curen, a former officer of the Debtor, has continued unabated throughout this case.

On August 1, 1991, pursuant to an Order of May 2, 1991, entered after a status hearing of that date, the Trustee filed his Final Report, Accounting, and Application for Compensation. A Final Audit Hearing was scheduled on October 22, 1991.

Although he had filed no written Objections to any of the filings relevant to the Audit Hearing, Mirow appeared at the Final Audit Hearing and raised certain Objections thereto. With respect to the Trustee's Application for Compensation, Mirow contested not the components of the Application, but the Trustee's computations of his compensation from those components.

The Trustee's Account showed total receipts of $410,812.21. His disbursements expended on the operation of the Debtor's business totalled $275,571.94. Therefore, $132,524.46 was available for the Trustee to distribute to creditors.

The formula for computation of trustees' compensation is set forth in 11 U.S.C. § 326(a), as follows:

**§ 326. Limitation on compensation of trustee**

(a) In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed fifteen percent on the first $1,000 or less, six percent on any amount in excess of $1,000 but not in excess of $3,000, and three percent on any amount in excess of $3,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims. . . .

In applying this formula, the Trustee utilized $410,812.21 as the base and computed his maximum compensation as follows:

| | |
|---|---|
| 15% on first $1,000 | $ 150.00 |
| 6% on next $2,000 | 120.00 |
| 3% of balance over $3,000 | 12,234.37 |
| | $12,504.37 |

The Trustee also submitted time sheets itemizing his services performed, as required by *In re Samson Industries, Inc.,* 108 B.R. 545, 549–51 (Bankr.E.D.Pa.1990). The descriptions of services on these time sheets appeared adequate, and they documented, through June 17, 1991, 192 hours of services. Compensation of $12,504.37 for 192 hours of work computes to a rate of about $65 an hour. Expenses of $703.89 were also itemized, indicating long-distance telephone calls, photocopies, postage, and travel costs. From review of the Trustee's itemization of his services, it was apparent to us that the value of his services exceeded the maximum compensation allowable under the § 326(a) formula. *Compare In re Leedy Mortgage Co.,* 126 B.R. 907, 917–19 (Bankr.E.D.Pa.1991) (undistinguished services of mostly non-operating trustee whose counsel performed most of services limited to rate of $50 per hour).

■ Although some cases have held to the contrary, *e.g., In re Pancoastal, Inc.,* 104 B.R. 656, 658–59 (Bankr.D.Del.1989), we have consistently followed the majority rule that the § 326(a) formula sets the absolute maximum compensation allowable to trustees. *See Leedy Mortgage, supra,* 126

B.R. at 916; and *In re Greenley Energy Holdings of PA., Inc.*, 94 B.R. 854, 856–88 (Bankr.E.D.Pa.) ("*Greenley I*"), *rev'd on other grounds*, 102 B.R. 400 (E.D.Pa.1989) ("*Greenley II*"). *Accord, e.g., In re Barker*, 132 B.R. 32 (Bankr.N.D.Cal.1991). In our view, the unambiguous language of the Code reciting that the formula recites a maximum limitation for compensation does not allow for any exceptions. *See United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989); and *Velis v. Kardanis*, 949 F.2d 78 at 81 (3d Cir.1991).

Here, as in *Greenley I*, 94 B.R. at 856, 861, the value of the Trustee's services exceeded the statutory cap on fees computed pursuant to § 326(a). Therefore, the only way that the fees payable to the Trustee could be reduced would be to challenge his application of the formula set forth in § 326(a).

That is precisely the challenge levelled by Mirow. While not denying that the phrase "all moneys disbursed or turned over in the case by the trustee to parties in interest" appears very broad in scope, Mirow argues that the language in the predecessor Bankruptcy Act was broader and that therefore this phrase should be read narrowly. The Act provided that, in the "normal administration" scenario, a trustees' commissions were calculated on a percentage of "all moneys disbursed or turned over by them to any persons." 11 U.S.C. § 76c(1) (repealed). Mirow compares the language of this section to that of 11 U.S.C. § 68(c)(2)(b) of the Act (repealed), which provided, in Chapter XI cases, that Commissions paid to referees, in addition to their salaries, were computed upon "the amount to be paid to unsecured creditors upon confirmation of the terms of the arrangement." He contends, without referencing any supportive legislative history, that Congress, in enacting the Code and allowing trustee's fees be computed on disbursements to "parties in interest," meant to stake out a middle ground between the computation of trustees' fees under the Act on moneys disbursed to "any parties" and the commissions to referees in Chapter XI cases based upon disbursements to "unsecured creditors" only.

One difficulty with Mirow's aforesaid, rather imaginative argument is that it is not supported by any authority. Cases interpreting former 11 U.S.C. § 76c(1) uniformly interpreted that section as including administrative costs of operating trustees to be within the category of "funds disbursed" for purposes of computing trustees' commissions. *See, e.g., In re Schautz*, 390 F.2d 797, 799–800 (2d Cir.1968); *Albers v. Dickinson*, 127 F.2d 957, 959–60 (8th Cir.1942); and *In re Wallace*, 14 F.2d 534, 537 (E.D.Okla.1926), *aff'd sub. nom. McMillan v. United States Fidelity & Guaranty Co.*, 22 F.2d 155 (8th Cir.1927). Mirow concedes that the holdings of these cases are contrary to his position, but he nevertheless contends that the language-change of the Code was meant to overrule their result.

This contention is addressed and dismissed in 1 NORTON BANKR.L. & PRAC., § 13.05, at Part 13–Page 8 (1981), thusly:

> There is one arguable distinction that Act § 48(c)(1) was broader since it allowed a computation based on "monies disbursed or turned over ... *to any person*," whereas the Code § 326(a) computation is based on distributions to "*parties in interest*." While there are thus far no cases contrasting these provisions, and the legislative history reveals no intended distinction, realistically there can be no distinctions between the definition of "any person" in Bankruptcy Act § 48(c)(1) and "parties in interest" as under Code § 326(a) for the purpose of interpreting Code § 326.
>
> Furthermore, as a public policy matter and to encourage qualified trustees in operating cases, courts should continue the Code § 326(a) percentages as applying to the gross monies received by the trustee. This might leave enough latitude for compensation so that business experts or consultants otherwise discouraged by percentage limitations might be encouraged to act as trustee. There can be no suggested abuse or harm by allow-

ing computations based on gross monies in light of the courts' discretion to determine the reasonable compensation pursuant to Code § 330 for the trustee's services upon all monies distributed to parties in interest (footnotes omitted).

The sparse authority from Code cases appears to concur with Norton's observation that an operating trustee *can* include administrative expenses among disbursements in computing the trustee's maximum compensation under § 326(a). In *In re North American Oil & Gas, Inc.*, 130 B.R. 473, 478 (Bankr.W.D.Tex.1990), highly-respected Judge Leif M. Clark

> concludes that disbursements to professionals and disbursements in payment of administrative expenses under Section 503(b)(1)(A) are includable in the base "all moneys disbursed or turned over to parties in interest" for purposes of calculating the maximum trustee's compensation allowed under Section 326(a). *In re Wallace*, 14 F.2d 534, 537 (E.D.Okla. 1926), *aff'd sub nom. McMillan v. United States Fidelity & Guar. Co.*, 22 F.2d 155 (8th Cir.1927) (construing Section 48(c) of the Bankruptcy Act of 1898); 11 U.S.C. § 326(a); 2 Collier on Bankruptcy ¶ 326.01 at 326–16 (15th ed. 1990).

The court in *In re New England Fish Co.*, 34 B.R. 899, 901 (Bankr.W.D.Wash.1983), the historical analysis of which is quoted by Mirow in his Brief with approval, cites *Wallace, supra*, with apparent approval. As Judge Clark suggests, 2 COLLIER ON BANKRUPTCY, ¶ 326.01, at 326–19 (15th ed. 1991), concurs, stating that

> the trustee is entitled to compensation based on total moneys disbursed, including administrative expenses, such as compensation to professional persons or expenses necessarily incurred in administering the estate (footnote omitted).

Another difficulty with Mirow's argument is, as Norton suggests, that it would effect a doubtful public policy of significantly reducing the level of compensation payable to operating trustees. Many courts have suggested that trustees are generally inadequately compensated under the terms of § 326(a). *See In re Williams*, 102 B.R. 197, 108 (Bankr.N.D.Cal.1989); *In re Orthopaedic Technology, Inc.*, 97 B.R. 596, 602 (Bankr.D.Colo.1989); and AMERICAN BANKRUPTCY INSTITUTE, NATIONAL REPORT ON PROFESSIONAL COMPENSATION IN BANKRUPTCY CASES, ¶ 10.2, at 205–15 (1991). We do not necessarily share this view, particularly as to panel trustees, because performance of trustee work can be challenging intellectually if done conscientiously and can be a fertile means to generate business.

However, we do share some concern about the adequacy of compensation of operating trustees. The distinction between operating and non-operating trustees probably explains the result in *Greenley II*, in which the district court concluded that what were apparently excellent accomplishments of an operating trustee should be compensated by allowing the computation, under § 326(a), to include proceeds from future guaranteed contracts. 102 B.R. at 404–05. *But see Greenley I*, 94 B.R. at 858–61. For this reason, operating trustees are carved out from the general rule that compensation can be allowed only upon detailed documentation of services actually performed by the trustee. *Compare Leedy Mortgage, supra*, 126 B.R. at 917–18; and *Samson Industries, supra*, 108 B.R. at 548–51, *with Greenley II*, 102 B.R. at 405–06.

Under the Bankruptcy Act, a trustee who conducted a business was accorded a fee cap of twice that allowable to non-operating trustees. 11 U.S.C. § 76c(2) (repealed). The failure of Congress to carry this provision, or any other provisions allowing special treatment of operating trustees, over to the Code requires bankruptcy courts to make some allowances for operating trustees who perform their services diligently. We are not inclined, as apparently are some courts, to allow trustees to "fudge" the limits of § 326(a) by adding to their compensation any fees for services performed by paraprofessionals who assist them in performing their trustee services, *see, Cavazos v. Simmons*, 90 B.R. 234 (N.D.Tex.1988), or by granting them compensation for expenses not generally allow-

able to other professionals. *Accord, In re Lanier Spa, Inc.*, 99 B.R. 490, 491–92 (Bankr.N.D.Ga.1989) (compensation of paralegal for ministerial services of trustee not allowed). However, we do believe that it is appropriate that operating trustees legitimately enhance their compensation by interpreting § 326(a) to allow disbursements made in actual operation of businesses to be included among the "moneys turned over … to parties in interest" in calculating trustees' fees. As we have indicated, no legislative history, case, or secondary authority appears to support Mirow's hypotheses.

Turning to the instant case, we consider the Trustee's compensation requested, in the amount of $12,504.37, to be modest remuneration for his services. The 192 documented hours ran only through June 17, 1991. Other duties and court appearances will doubtless be required before this case is closed, due in large part to Mirow's rather excessive advocacy. We will therefore award the Trustee the full amount of commissions which he seeks.

The Trustee has also documented $703.89 in expenses. Many of these entries, totalling $353.90, are for mileage, tolls, and parking charges incurred in local travel. As we indicated in, *e.g., In re Beck–Rumbaugh Associates*, 68 B.R. 882, 888 (Bankr.E.D.Pa.1987), *aff'd*, 84 B.R. 369 (E.D.Pa.1988), we join those courts which hold, as to all professionals, that such costs are non-reimbursable overhead. *E.g., In re First Software Corp.*, 79 B.R. 108, 120 (Bankr.D.Mass.1987); and *In re Thacker*, 48 B.R. 161, 164 (Bankr.N.D.Ill.1985). In keeping with our policy not to "fudge" § 326(a), we will not allow trustees to receive compensation for expenses which we do not allow to other professionals. We will therefore reduce the allowance of expenses to the Trustee to $349.99.

An Order consistent with this Opinion will be entered.

### ORDER

AND NOW, this 21st day of November, 1991, upon consideration of the Final Account and the Application for Compensation submitted by Morton Batt, Chapter 7 Trustee in the above-captioned case ("the Trustee"), at a Final Audit Hearing of October 22, 1991, and upon consideration of the Briefs of the objecting creditor, Steven B. Mirow, Esquire, and the Trustee, relevant to the Trustee's Compensation, it is hereby ORDERED as follows:

1. The Final Account submitted by the Trustee is APPROVED.

2. The Trustee is awarded compensation for services rendered in the sum of $12,504.37, together with reimbursement for expenses in the amount of $349.99.